Virgie M. JOHNSON, Appellant,

v.

ANGELICA UNIFORM GROUP, INC., Appellee.

No. 84–1824.

United States Court of Appeals, Eighth Circuit.

Submitted March 13, 1985.

Decided May 20, 1985.

Kenneth Johnson, Springfield, Mo., for appellant.

Thomas M. Hanna, St. Louis, Mo., for appellee.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BOWMAN, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Virgie M. Johnson appeals from the district court's[1] judgment in favor of defendant Angelica Uniform Group, Inc., (Angelica) in her suit brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* Johnson alleged that she was unlawfully discharged because of religious discrimination. The district court, however, found that Johnson was discharged because of excessive absenteeism. We affirm the judgment of the district court.

## I. Facts

Angelica hired Johnson to work at its Summersville, Missouri plant on April 10, 1978. Johnson was subject to a collective bargaining agreement between the United Garment Workers of America and Angelica. The agreement provided in part that an employee would be subject to termination after missing sixteen days in twelve months.

Johnson has been a member of the Worldwide Church of God, a Christian denomination, since 1965. The Worldwide Church of God requires its members to observe Saturday Sabbath and certain other Holy Days by refraining from labor. Each Sabbath and Holy Day is observed from sundown on the proceeding day until sundown on the designated day. At the time Johnson was hired she did not inform Angelica of her religious affiliation or of the various religious observances she was required to meet.

Between April 28 and July 11, Johnson missed ten work days. On July 11, the plant manager and Johnson's production line supervisor gave Johnson an oral warning about absenteeism. Johnson still did not mention her religious affiliation. After missing two more days of work in August, Johnson received her first written warning about absenteeism on August 25, 1978. At that time she informed her manager that she would need time off in October for religious purposes, but did not mention the specific dates involved. Johnson again missed work on September 25 and October 2, 1978, making the total number of absences fourteen, after which she received a second written warning. Although October 2 was a Holy Day, Johnson informed no one of that fact. The plant manager told Johnson that two more absences would subject her to discharge, but Johnson made no explanations about her prior absences, nor did she mention specific dates she wanted off work for religious reasons.

Johnson's last day of work at Angelica was Tuesday, October 10, 1978. In a letter dated that day and postmarked October 11 Johnson wrote the plant manager, stating that she would be gone from October 11 through October 24 for religious purposes. The plant manager received the letter after October 12. October 11, 1978, was Johnson's fifteenth absence; although it was a Holy Day, Johnson had not previously told anyone she would be absent. The next day, October 12, which was not a Holy Day, was Johnson's sixteenth absence. The plant manager fired Johnson on October 13. Of the sixteen days Johnson missed before her discharge, four and a half were for sick leave and the others for personal reasons.

### A. Proceedings Below

Johnson filed this claim of religious discrimination on September 1, 1983, after receiving a right to sue letter from the Equal Employment Opportunity Commission. Johnson testified at trial that she needed Thursday and Friday, October 12 and 13, off from work to prepare for her trip to the Lake of the Ozarks for the Feast of the Tabernacles, which lasted from Mon-

1. The Honorable William R. Collinson, United States Senior District Judge for the Western District of Missouri.

day, October 16 through Monday, October 23. Johnson made the two hour trip to the Lake of the Ozarks on Friday, October 13, and did not return to the plant until Wednesday, October 25, when she was informed of her discharge. The district court specifically found that Johnson's claim that she needed October 12 and 13 for preparation and travel to the Feast of the Tabernacles was not credible. The Feast did not begin until Monday, October 16, and she could have made the trip on Sunday, October 15, neither the Sabbath nor a Holy Day. At the conclusion of the bench trial, the district court held that Johnson had failed to establish a prima facie case of religious discrimination. The court concluded that Johnson was discharged because of her excessive absenteeism, not because an employment requirement conflicted with her religious duties. The court further held that the collective bargaining agreement provision allowing sixteen days of absence before discharge was a reasonable accommodation of Johnson's religious beliefs.

**B. Prima Facie Requirements of a Religious Discrimination Case**

To establish a prima facie case of religious discrimination, a plaintiff must plead and prove that "(1) he has a bona fide belief that compliance with an employment requirement is contrary to his religious faith; (2) he has informed his employer about the conflict; and (3) he was discharged because of his refusal to comply with the employment requirement." *Brown v. General Motors Corp.*, 601 F.2d 956, 959 (8th Cir.1979). *Accord Turpen v. Missouri-Kansas-Texas Railroad Co.*, 736 F.2d 1022, 1026 (5th Cir.1984). We agree with the district court that Johnson failed to establish the elements of a prima facie case. Johnson essentially argues that Angelica's employment policy on absentee-ism conflicts with her religion's requirement that she observe the Sabbath and Holy Days. As a practicing member of the Worldwide Church of God for over a dozen years, Johnson must have known when she began work at Angelica that several of the Holy Days would fall on work days.[2] Despite her opportunity to notify her employer in advance of her need to observe these Holy Days, Johnson did not mention her religious affiliation or her religious requirements until August 25, after she had missed twelve days of work. The district court found that Johnson's mention of her religious needs at that time consisted only of a vague reference to needing time off in October for religious purposes, without stating any specific dates. Johnson's only other notice to her employer of her religious needs was in her letter postmarked October 11, stating that she would be gone from October 11 through October 24. This letter was not received by the plant manager until after Johnson was discharged on October 13.

Johnson clearly did not satisfy the notice element of the prima facie requirements. Had Johnson informed the plant manager or another supervisor of her need for religious accommodation when she began work at Angelica or at least prior to her absences for religious purposes, her employer would have had the chance to explain the absentee policy in relation to Johnson's religious needs, and perhaps work out an arrangement satisfactory to both parties. Instead Johnson used fourteen of the allotted sixteen absences in less than six months, and only bothered to notify Angelica of a required extended absence for religious purposes after that absence had begun. In sum, we cannot say that the district court's finding that Johnson failed to provide adequate information about her conflict is clearly erroneous. We view this as a factual finding. *See* Fed.R. Civ.P. 52(a) (in action tried to the court,

---

**2.** In 1978, the Holy Days fell on April 8, April 21–28, June 11, October 2, October 11, and October ber 16–23.

reviewing court shall not set aside findings of fact unless clearly erroneous). *See also Henderson v. Huecker,* 744 F.2d 640, 645 (8th Cir.1984). Because Johnson failed to give the required notice, it is clear that her termination was due to excessive absenteeism and not because of a conflict between an employment requirement and her religious faith.

■ Although we need not reach the issue in view of our conclusion that Johnson failed to make a prima facie case of religious discrimination, we also agree with the district court that the collective bargaining agreement in effect here provided reasonable accommodation of Johnson's religious needs. *See Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 78, 97 S.Ct. 2264, 2273, 53 L.Ed.2d 113 (1977) (seniority system, establishing neutral way to minimize occasions when an employee would have to work on a day he would prefer to have off, was in itself a significant accommodation to the religious and secular needs of employees). The district court found that of the sixteen days Johnson missed before she was terminated, four and a half were for illness, and only four were Holy Days or the Sabbath, of which Johnson never notified Angelica. The sixteen day limit provided for in the collective bargaining agreement was liberal enough to accommodate Johnson's religious requirements. The language of this court in *Chrysler Corp. v. Mann,* 561 F.2d 1282, 1286 (8th Cir.1977), *cert. denied,* 434 U.S. 1039, 98 S.Ct. 778, 54 L.Ed.2d 788 (1978), seems particularly apt here: "Where, as here, an employee is disinterested in informing his employer of his religious needs and will not attempt to accommodate his own beliefs through the means already available to him * * *, he may forego the right to have his beliefs accommodated by his employer." Under the circumstances here, no further acts of accommodation on the part of Angelica were required.

We affirm the district court's judgment in favor of the defendant, Angelica.