**Gerald G. MOORE, Plaintiff,**

**v.**

**A.E. STALEY MANUFACTURING COMPANY, an Illinois Corporation, a/k/a Staley Continental, Inc. and Local 837, Allied Industrial Workers of America, AFL–CIO, Defendants.**

**No. 88 C 10115.**

United States District Court, N.D. Illinois, E.D.

Sept. 26, 1989.

Vernon L. Alger, Johns & Carson, Berrien Springs, Mich., and Penny Nathan Kahan, Chicago, Ill., for plaintiff.

John L. Collins, Seyfarth Shaw Fairweather & Geraldson, Marvin Gittler, Asher Pavalon Gittler & Greenfield, Chicago, Ill., and Matthew R. Robbins, Previant Goldberg Uelmen & Gratz Miller & Brueggeman, Milwaukee, Wis., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Gerald Moore filed this action against A.E. Staley Company and Local 837, Allied Industrial Workers of America, AFL–CIO, alleging that the defendants had engaged in religious discrimination in violation of 42 U.S.C. § 2000e. Each party has filed a motion for summary judgment. For the reasons set forth below, we deny plaintiff Gerald Moore's motion for summary judgment, and we grant summary judgment in favor of each defendant.

### Background[1]

Plaintiff Gerald Moore ("Moore") has been an employee of defendant A.E. Staley Company ("Staley") at its Decatur, Illinois, plant since April 28, 1976. Defendant Local 837, Allied Industrial Workers of America ("Union") represents the Decatur facility's production and maintenance employees in collective bargaining.

Moore is a member of the Seventh Day Adventist Church. Adventist Church members refrain from working during their Sabbath, which begins at sundown on Friday and ends at sundown on Saturday. Moore did not abstain from working on the Sabbath until the middle of 1985. However, in late 1984, Moore advised the Union that he wished to avoid being scheduled for work on his Sabbath. He gave this same notice to Staley in June 1985.

Moore filed charges of religious discrimination with the Equal Employment Opportunity Commission in 1985, alleging that Staley and the Union had failed to reasonably accommodate his religious beliefs. After receiving a "right to sue" letter from the EEOC, Moore filed an action in this Court. Moore claims that Staley and the Union have violated the religious discrimination prohibition of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

Staley and the Union have negotiated three successive collective bargaining agreements since 1980, including a 1986 agreement which is now in effect. One topic covered by these agreements is seniority. The agreements provide for both

---

1. Unless otherwise indicated, these facts are taken from the "Plaintiff's and Defendants' Joint Statement of Uncontested Material Facts."

**1158**

departmental and plant-wide seniority. Departmental seniority has determined such matters as preferences for obtaining jobs and shifts open for bid in a department. Plant seniority has determined the order of lay off and recall, and preferences for obtaining jobs and shifts opened by plant-wide bid, if the bidder qualifies. Moore is currently ranked 752 of 812 employees in plant-wide seniority, and third of three employees in departmental seniority.

The agreements have also included scheduling provisions. Each of the bargaining agreements have provided that employees work a forty hour week consisting of five eight-hour days. The vast majority of employees are scheduled to work any five of the seven days per week. A few of the most senior employees can obtain first-shift jobs, which are scheduled for Monday through Friday. Moore does not have sufficient seniority to obtain a first-shift job and is subject to being scheduled for work on any five days of the week.

The method for determining the particular five-day schedule for each employee changed after the termination of the 1980 agreement. The 1980 agreement left the scheduling of employees to the discretion of the supervisor. During the 1983 negotiations, Staley and the Union agreed to a scheduling procedure in which Staley no longer assigned employees to specific days of work. The new system allowed employees within a department to select their own schedule. Staley and the Union agreed that Staley would have no authority to modify or reject a schedule, as long as the employees submitted a schedule providing a qualified operator for each day, shift and job. In the event that the employees failed to submit a properly completed schedule, the supervisor could complete the department's schedule by department seniority, level and qualification. (1983 CBA Par. 224). This scheduling system was retained in the 1986 collective bargaining agreement.

The scheduling system has two related goals. First, the system is designed to prevent a supervisor's bias or favoritism from influencing scheduling decisions. Second, the system operates to create a more equitable distribution of the days in which employees are required to work. Saturday is the most sought after free day; under the new system, employees have rotated free Saturdays.

Since 1983, Staley's employees have scheduled the days of the week that each employee is required to work. Since the time Moore requested a religious accommodation from Staley, the employees in plaintiff's department have submitted a complete schedule. As a result, Moore's supervisors have not had an opportunity to schedule the days of the week in which Moore works. Unfortunately, Moore has occasionally been scheduled for Saturday work under the employee controlled system.

After Moore first requested an accommodation in 1985, Staley considered various ways to avoid scheduling Moore on Saturdays. Moore's position at the time required him to work one out of every nine Saturdays. Staley proposed various accommodations. First, Staley suggested that Moore be transfered to a different job level on the same shift. However, as the Union pointed out, Moore could not be shifted up or down without violating the seniority and job bidding procedures of the collective bargaining agreement. Second, Staley proposed to change Moore's shift, but leave him at the same job level. However, this transfer would also run afoul of several provisions of the collective bargaining agreement.

Even though the Union believed the proposed accommodations violated the collective bargaining agreement, the Union presented the plan to its membership, in an attempt to obtain a voluntary accommodation for Moore. The Union membership rejected the proposals. Staley and the Union agreed to encourage voluntary swaps by other employees whenever Moore was scheduled to work on a Saturday. Union and Staley representatives discussed voluntary swaps with Moore's coworkers.

During August 1985, Moore, Staley and the Union discussed other possible accommodations. Moore proposed that Staley

should simply not schedule him for work during his Sabbath. This proposed accommodation was rejected by both Staley and the Union. Staley would not agree to avoid scheduling Moore on his Sabbath because it no longer possessed the right to schedule employees. The Union also refused to permit Staley to schedule Moore. The Union agreed that the employees, not Staley, had the right to create schedules. Furthermore, because all employees were entitled to an equal share of free Saturdays, Moore's proposed accommodation would affect the rights of other employees. Finally, if Moore were not scheduled on Saturdays, he would be scheduled for a disproportionate number of Sundays; under the contract, Sundays are premium time days that employees are guaranteed to share equally.

Staley would not agree to avoid disciplining Moore for unexcused absences on his Sabbath. Staley was forced to fill Moore's position with an overtime employee. At a minimum, Staley was required to pay an additional four hours, or about $50.00, each time Moore was absent.

The parties discussed a possible ten hour per day, four day work week for Moore. Staley rejected this proposal because it did not meet its continuous operation needs. Staley only schedules the number of employees that are necessary. Employees are scheduled for eight-hour shifts; a two-hour overlap would result in an unnecessary employee and expense for those hours. This proposal would result in either "make-work" projects or the payment of an unnecessary eight hours of wages per week. Additionally, Staley would still need to cover the missed fifth day at additional expense.

Since these initial discussions, the parties have not been able to reach an accommodation which did not, according to the Union and Staley, violate the collective bargaining agreement. Moore has also transferred positions several times, reducing seniority. At the present time, the parties have used two means of reducing the number of Saturdays on which Moore is scheduled to work. First, Staley and the Union have continued to actively solicit voluntary swaps from Moore's coworkers. Due to voluntary accommodations in scheduling, Moore has not been scheduled to work on his Sabbath from January 1988 to early May 1989. Second, Staley has scheduled a residual weekly overtime shift on Friday evenings. This has allowed Staley to accommodate Moore without creating additional overtime costs.[2]

The parties have each moved for summary judgment. Moore claims that the Court should make two findings in his favor. First, Moore argues that he has satisfied the requirements for a *prima facie* case of religious discrimination under Title VII. Second, Moore contends that his proposal that the defendants agree not to schedule him during his Sabbath was a reasonable accommodation as a matter of law. The Union and Staley counter by arguing that they have taken action to reasonably accommodate Moore. In addition, both claim that Moore's proposed accommodation would create undue hardship.

### Standard of Review

"A motion for summary judgment should be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Checkers, Simon & Rosner v. Lurie Corp.*, 864 F.2d 1338 (7th Cir.1989) (citation omitted). "Rule 56(e) provides that, when a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The moving party bears the burden of establishing the absence of any disputed facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If, however, the nonmoving party bears the burden of proving an issue at trial, it also bears the burden of presenting sufficient facts on summary judgment from which a trier of fact could find in its favor, and the moving party need only "[point] out to the

---

2. This appears to be a temporary solution only.

**1160**

District Court ... that there is an absence of evidence to support the nonmoving party's case." *Id.* 106 S.Ct. at 2554; *Beard v. Whitley County REMC,* 840 F.2d 405, 410 (7th Cir.1988). In deciding a motion for summary judgment, the court must read all facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 106 S.Ct. 2505, 2513; *Richardson v. Penfold,* 839 F.2d 392, 394 (7th Cir. 1988).

### Discussion

■ "Section 703(a)(1) of the Civil Rights Act of 1964, Title VII, 78 Stat. 255, 42 U.S.C. § 2000e–2(a)(1) makes it unlawful employment practice for an employer to discriminate against an employee or prospective employee on the basis of religion." *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 97 S.Ct. 2264, 2268, 53 L.Ed.2d 113 (1977). The initial step in a Title VII case is to determine whether the plaintiff can make out a *prima facie* case. *Baz v. Walters,* 782 F.2d 701, 706 (7th Cir.1986). There are three elements to the *prima facie* case. First, the plaintiff must show that he or she holds a sincere religious belief that conflicts with an employment requirement. Second, the plaintiff must have informed the employer of this conflict. Finally, the employer must have discharged, disciplined or otherwise damaged the plaintiff. *Id.; Smith v. Pyro Min. Co.,* 827 F.2d 1081, 1085 (6th Cir.1987), *cert. denied,* 485 U.S. 989, 108 S.Ct. 1293, 99 L.Ed.2d 503. Neither Staley nor the Union dispute Moore's contention that he has established a *prima facie* case of religious discrimination.

When the plaintiff succeeds in establishing the *prima facie* case, the burden then shifts to the defendant. The employer must demonstrate that "he cannot accommodate the plaintiff's religious practice without undue hardship." *Baz,* 782 F.2d at 706. "If the [employer or union] successfully rebuts the *prima facie* case, the plaintiff, who has the ultimate burden of persuasion, must show that the employer's

proffered reasons for failure to accommodate are a pretext for discrimination." *Id., citing Redmond v. G.A.F. Corp.,* 574 F.2d 897, 901 (7th Cir.1978).

Staley and the Union maintain that they have met their burden of accommodation. They argue that they have taken measures to reasonably accommodate Moore, and that any proposed accommodations that have been rejected would have created undue hardship. However, Moore claims that he is entitled to summary judgment because the defendants rejected his proposal to refrain from scheduling him on his Sabbath, and that this proposed accommodation would not impose undue hardship on Staley or the Union.

■ Staley and the Union maintain that their program of support and solicitation of voluntary swaps constitutes a reasonable accommodation. We agree and find that the system of voluntary swaps instituted by the defendants was a reasonable accommodation. There is considerable authority to support this proposition. For example, in *Smith v. Pyro Min. Co.,* 827 F.2d 1081 (6th Cir.1987), the court stated that: "[u]ndoubtedly, one means of accommodating an employee who is unable to work on a particular day due to religious convictions is to allow the employee to trade work shifts with another qualified employee. Other circuits have held that when an employee allows such a trade, it has reasonably accommodated its employee." *Id.* at 1088, *citing Brener v. Diagnostic Center Hospital,* 671 F.2d 141, 146 (5th Cir.1982); *United States v. Alburquerque,* 545 F.2d 110, 114 (10th Cir.), *cert. denied,* 433 U.S. 909, 97 S.Ct. 2974, 53 L.Ed.2d 1092 (1976). *See also Eversley v. MBank Dallas,* 843 F.2d 172, 176 (5th Cir.1988).

The undisputed facts of the case also support the contention that Moore was reasonably accommodated. Not only did the defendants allow Moore to swap shifts with other employees, but they encouraged and solicited other employees to undertake these swaps.[3] Thus, Staley and the Union

---

3. *See* Plaintiff's and Defendants' Joint Statement of Uncontested Material Facts ("JSMF"), Pars. 27, 32, 40, 42, 44.

went a step beyond the accommodation endorsed as reasonable in *Smith* and the cases cited above. Furthermore, the voluntary swap program appears to have accomplished its goal. As a result of this program of voluntary swaps, Moore has not been scheduled to work on his Sabbath from January 1988 to May 1989.[4]

Staley and the Union have also undertaken other efforts that are undeniably reasonable. For example, due to an impending organizational change, a residual weekly overtime shift was created. Staley has regularly scheduled this shift for Friday evenings because such a schedule allowed Moore to be accommodated without additional overtime costs. (JSMF, par. 43).[5]

Moore argues that these measures cannot constitute an accommodation because the conflict between his and Staley's conflicting schedules has never been resolved. In other words, plaintiff suggests that unless the measures proposed by the employer completely eliminate the *possibility* of a religious conflict, they cannot be reasonable. This absolutist interpretation of an employer's burden of accommodation is inconsistent with the thrust of judicial treatment of the issue.

For example, Moore's interpretation of Title VII is inconsistent with the cases involving voluntary swap programs. Any voluntary system is at the mercy of its volunteers; the system will not work perfectly should co-workers be unwilling to swap. However, despite this possibility that voluntary swaps will not always resolve a scheduling conflict, courts have held that the programs are reasonable accommodations. *Brener v. Diagnostic Center Hospital*, 671 F.2d 141, is a case in point. In *Brener*, the defendant hospital instituted a voluntary swap program to accommodate the plaintiff. However, this system was not successful because the plaintiff was unwilling to solicit replacements and other employees were reluctant

to trade schedules with him. *Id.* at 145. Nevertheless, the Court upheld the system as reasonable.

In light of our finding that the accommodation proposed by the defendants is reasonable, we need not engage in any further inquiry. "By its very terms the statute directs that any reasonable accommodation by the employer is sufficient to meet its accommodation obligation.... Thus, where the employer has already reasonably accommodated the employee's religious needs, the statutory inquiry is at an end. The employer need not further show that each of the employee's alternative accommodations would result in undue hardship." *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 107 S.Ct. 367, 372, 93 L.Ed.2d 305 (1986). Nevertheless, the undue hardship that would result from any of the proposed accommodations is an adequate and independent ground on which to grant the defendants' motion for summary judgment.

In *Trans World Airlines v. Hardison*, 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113, the Supreme Court gave substance to the concept of undue hardship. In that case, the plaintiff Hardison belonged to a church that prohibited him from working on Saturdays. His employer and union had negotiated a collective bargaining agreement which provided for a seniority-based scheduling system. When Hardison transferred positions within the company, his seniority was too low to prevent him from being scheduled on Saturdays. The defendants refused to waive the seniority provision in the collective bargaining agreement to accommodate Hardison. *Id.* 97 S.Ct. at 2268.

The Court held that the employer was not obligated to undertake any accommodation that would result in undue hardship. The Court defined the threshold for undue hardship as any burden on the employer greater than a *"de minimus* cost." *Id.* at 2277. Accordingly, the Court held that

4. JSMF, Par. 42.

5. In addition, the Union suggests that the rotation scheduling system itself might be viewed as a reasonable accommodation. *Hardison* supports this argument: "[I]t appears to us that the system itself represented a significant accom-

modation to the need, both religious and secular, of all TWA's employees." 97 S.Ct. at 2274. We consider this additional support for our conclusion that Moore has been reasonably accommodated.

breaching the seniority provision in the collective bargaining agreement would impose an undue hardship on TWA. In addition, the Court rejected a proposal, suggested by the Court of Appeals, that Hardison be scheduled for a four-day work week because the proposal would "involve costs to TWA, either in the form of lost efficiency in other jobs or higher wages." *Id.* at 2277.

In the present case, Moore proposed that Staley deviate from the scheduling system and agree not to schedule him on his Sabbath. Moore concedes that this proposal is contrary to the collective bargaining agreement, but argues that this proposed accommodation would not impose undue hardship on Staley or the Union. According to Moore, when a collective bargaining agreement is implicated in a proposed accommodation, *Hardison* limits the defense of undue hardship to seniority provisions. In other words, Moore claims that undue hardship will result from the breach of a collective bargaining agreement only if a seniority provision is breached. Moore argues that Staley is not entitled to claim undue hardship because it would not be forced to breach a seniority provision in its collective bargaining agreement. We disagree and find that the proposed accommodation would impose undue hardship on Staley, as the accommodation is contrary to provisions of the collective bargaining agreement.

Moore's labored interpretation of *Hardison* ignores its basic message: an "accommodation causes 'undue hardship' whenever that accommodation results in 'more than a *de minimus* cost' to the employer." *Ansonia Bd. of Educ.*, 107 S.Ct. at 371. The breach of a provision in a collective bargaining agreement, even if it is not a seniority provision, could potentially result in greater than a *de minimus* cost to the employer.

Furthermore, the plain language of *Hardison* reveals that the Court did not intend to limit its holding to seniority provisions. Rather, the Court recognized the importance of collective bargaining agreements in general, as well as the costs that would

be imposed by selective breaches of these agreements. "[W]e do not believe that the duty to accommodate requires TWA to take steps inconsistent with the otherwise valid agreement. Collective bargaining, aimed at effecting workable and enforceable agreements between management and labor, lies at the core of our national labor policy." *Id.* 97 S.Ct. at 2274.

Case law interpreting *Hardison* supports our conclusion that the accommodation proposed by Moore would create undue hardship. In *Baz v. Walters*, 782 F.2d 701, an employee of a V.A. hospital claimed that his employer had failed to reasonably accommodate him by giving him a transfer to another hospital. Even though there was no collective bargaining agreement in force, the court held that such a transfer would impose undue hardship on the hospital. The undue hardship identified by the court was the administrative inconvenience that the hospital would have to incur during the transfer process. *Id.* at 707. Certainly, the hardship resulting from a breach of a collective bargaining agreement equals or exceeds the hardship of administrative inconvenience recognized by the Seventh Circuit in *Baz.*

Notwithstanding the hardship imposed by a breach of the collective bargaining agreement, forcing Staley to refrain from scheduling Moore on Saturdays would also impose undue hardship on Staley's other employees. If Moore were taken out of the Saturday rotation, other employees would be required to work a disproportionate number of Saturdays. However, the contract operates to guarantee employees the right to rotate free Saturdays. Saturdays, for personal as well as religious reasons, are the most popular day that Staley employees would like to have free. (Barter Aff., Par. 5). "It would be anamolous to conclude that by 'reasonable accommodation' Congress meant that an employer must deny the shift and job preference of some employees, as well as deprive them of their contractual rights, in order to accommodate or prefer the religious needs of others, and we conclude that Title VII does not require an employer to go that far." *Hardison*, 97 S.Ct. at 2275.

In addition to the proposal suggested by Moore, Staley and the Union have identified undue hardships associated with each of the other possible accommodations suggested by any party. Proposals involving transferring Moore to a different shift or job level violated seniority, bidding and various other provisions of the collective bargaining agreement. (JSMF 24, 26, 30, 39). As we have concluded, an employer is not required to breach a provision of a valid collective bargaining agreement to accommodate an employee.

The possibility of a ten-hour per day, four-day work week was also rejected. This proposal would have resulted in a two-hour overlap; because Staley operates on eight-hour shifts, this proposal would have resulted in wasted time. Furthermore, Staley would still have to cover the missed fifth day at additional expense. These increased monetary and organizational costs are greater than *de minimus*. In fact, in *Hardison*, the Supreme Court rejected a similar proposed accommodation, stating that this alternative would "involve costs to TWA, either in the form of lost efficiency or higher wages." *Hardison*, 97 S.Ct. at 2277.

Moore cites several cases that emphasize the factual nature of Title VII religious discrimination claims. Contrary to Moore's suggestion, these cases do not stand for the proposition that summary judgment is always inappropriate in such a case. These courts have merely pointed out the inherently factual nature of most Title VII cases. In the present case, however, there are no material disputes of fact that warrant the denial of summary judgment.

Our decision to grant the defendants' motions for summary judgment has been based entirely on undisputed facts. Moore has pointed to no facts in the record that create an issue of fact for a jury. Instead, Moore suggests that this case should go to trial to determine whether he will be able to "proffer evidence to rebut the Defendants' claim of undue hardship."

However, Moore's burden is to produce facts, not promises. In a motion for summary judgment, the "adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. at 2511. Moore has failed to set forth specific facts demonstrating that a trial is necessary. Accordingly, summary judgment is warranted.

### Conclusion

For the reasons stated above, plaintiff Moore's motion for partial summary judgment is denied; defendant A.E. Staley Manufacturing Company's motion for summary judgment is granted; and defendant Local 837, Allied Industrial Workers of America's motion for summary judgment is granted. It is so ordered.