**Robert J. VAN KOTEN, Plaintiff,**

v.

**FAMILY HEALTH MANAGEMENT, INC. and Chiromed Physicians, P.C., Defendants.**

No. 95 C 50189.

United States District Court, N.D. Illinois, Western Division.

Jan. 10, 1997.

Karen Lynn Spence, Herbert H. Victor, Chicago, IL, Katherine M. Anthony, Chicago, IL, for Robert J. Van Koten.

Peter S. Switzer, Barrick, Switzer, Long, Balsley & Van Evera, Rockford, IL, for Family Health Management, Inc.

Richard K. Van Evera, Peter S. Switzer, Robert C. Pottinger, Thomas G. Ruud, Jasper Dominic Vaccaro, James A. Maloney, Barrick, Switzer, Long, Balsley & Van Evera, Rockford, IL, Pamela Julia King, Heyl, Royster, Voelker & Allen, Rockford, IL, for Chiromed Physicians, P.C.

### ORDER

P. MICHAEL MAHONEY, United States Magistrate Judge.

### I. BACKGROUND

Plaintiff Robert J. Van Koten ("Plaintiff") is licensed to practice chiropractic in the

state of Illinois. Plaintiff was hired by Defendant Family Health Management, Inc. ("FHM") as a chiropractor on September 21, 1994. Plaintiff's employment contract was with FHM, but he was "leased out" to Defendant Chiromed Physicians, P.C. ("Chiromed"). Plaintiff worked at Chiromed's office in Sterling, Illinois. (Defendants' answer to Plaintiff's complaint, ¶¶ 8–11).

Plaintiff claims to adhere to a religion known as "Wicca." Wicca is also known as "The Craft" and as "The Old Religion." According to Plaintiff, Wicca is "a monistic and pantheistic, positive, shamanistic, nature based religion that is predicated on a simple set of ethics and morality which promulgates avoidance of harm to other people, promoting brotherly love and harmony with and respect for all life forms." (Plaintiff's complaint, ¶ 2).

FHM is an entity engaged in a business which affects commerce and employs in excess of 20 employees on a full time basis for 52 weeks per year. Therefore, FHM is a qualified employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. Chiromed is an entity engaged in a business which affects commerce and employs in excess of 20 employees on a full time basis for 52 weeks per year. Therefore, Chiromed is a qualified employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

On February 23, 1995, Plaintiff filed an unverified complaint for discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., claiming that FHM and Chiromed (collectively, the "Defendants"), "wilfully and intentionally discriminated" against Plaintiff because of his religious beliefs.

On April 17, 1996, Plaintiff and Defendants consented to proceed before Magistrate Judge P. Michael Mahoney. On August 23, 1996, this case, including Defendants' motion for summary judgment, was transferred to Magistrate Judge P. Michael Mahoney.

On July 29, 1996, Defendants filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons articulated below, Defendants' motion for summary judgment is granted.

## II. THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–2510, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). *See also* Northern District of Illinois, Local General Rule 12 M. If the moving party satisfies this burden, the non-moving party has the burden to "set forth specific facts showing that there is a genuine issue [of material fact] for trial." Fed.R.Civ.P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Anderson*, 477 U.S. 242, 248–249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). To sustain its burden, the non-moving party cannot rest on the mere allegations in the pleadings. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Rather, the non-moving party (who bears the burden of proof on a particular issue) must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial. *Williams v. Williams Electronics, Inc.*, 856 F.2d 920, 922 (7th Cir.1988) (citing *Celotex*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Anderson*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The non-moving party "must do more than simply 'show' that there is some metaphysical doubt as to the material facts." ' *Williams*, 856 F.2d 920, 922 (7th Cir.1988) (quoting *Matsushita*, 475 U.S. 574,

586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). Moreover, under Northern District of Illinois Local General Rule 12 N, the non-moving party must submit "a response to each numbered paragraph in the moving party's [12 M] statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *See* Northern District of Illinois, Local General Rule 12 N(3). If no genuine issue of material fact exists, the sole question is whether the moving party is entitled to judgment as a matter of law. *Miranda v. Wisconsin Power & Light Co.,* 91 F.3d 1011, 1014 (7th Cir. 1996). Further, "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## III. RELIGIOUS DISCRIMINATION UNDER TITLE VII

### A. Introduction

Title VII provides that "it shall be an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion." 42 U.S.C. § 2000e-2(a)(1). Religion includes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j). Title VII has been interpreted to protect against requirements of religious conformity and as such protects those who refuse to hold, as well as those who hold, specific religious beliefs. *Shapolia v. Los Alamos National Laboratory,* 992 F.2d 1033, 1036 (10th Cir.1993) (citing *International Ass'n of Machinists & Aerospace Workers v. Boeing Co.,* 833 F.2d 165, 169 (9th Cir.1987)).

Based on its reading of the available cases, the Magistrate sees two types of religious discrimination cases under Title VII:(1) Accommodation cases, and (2) Discharge cases.

### B. Accommodation Cases

■ The accommodation cases encompass fact patterns in which the defendant refused to accommodate a religious practice of the plaintiff. *See, e.g., Moore v. A.E. Staley Manufacturing Company,* 727 F.Supp. 1156 (N.D.Ill.1989); *Johnson v. Angelica Uniform Group, Inc.,* 762 F.2d 671 (8th Cir.1985). The accommodation cases use a three step framework for evaluating Title VII discrimination claims, as set forth in *Moore* and *Johnson.* Under the accommodation framework, the plaintiff must show the following three elements to establish a prima facie case: "First, the plaintiff must show that he or she holds a sincere religious belief that conflicts with an employment requirement. Second, the plaintiff must have informed the employer of this conflict. Finally, the employer must have discharged, disciplined or otherwise damaged the plaintiff." *Moore,* 727 F.Supp. at 1160 (citing *Baz v. Walters,* 782 F.2d 701, 706 (7th Cir.1986)). *See also Johnson,* 762 F.2d at 672. Under Title VII, employers are required to reasonably accommodate employees' religious practices where accommodation does not cause undue hardship to the company's business interests. *Shapolia,* 992 F.2d 1033, 1037 (citing *Toledo v. Nobel–Sysco, Inc.,* 892 F.2d 1481, 1486 (10th Cir.1989), *cert. denied,* 495 U.S. 948, 110 S.Ct. 2208, 109 L.Ed.2d 535 (1990)). Accordingly, the courts have inferred religious discrimination where an employer was unwilling to accommodate religious practices.

In the instant case, Plaintiff does not allege that Defendants were unwilling to accommodate a religious practice. Rather, Plaintiff alleges that Defendants fired Plaintiff because of his religious beliefs. Consequently, the accommodation framework seems inapplicable.

### C. Discharge Cases

The discharge cases encompass fact patterns in which the defendant fired the plaintiff because of plaintiff's religious beliefs. A plaintiff may prove illegal discrimination by direct evidence or by use of the *McDonnell Douglas* burden-shifting framework, set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. at 800, 93 S.Ct. at 1823 (1973). *See*

*also Baz v. Walters,* 782 F.2d 701, 706 (7th Cir.1986). In the instant case, Plaintiff has chosen the *McDonnell Douglas* burden-shifting framework.

Under *McDonnell Douglas,* the plaintiff has the initial burden of establishing a prima facie discrimination case by showing four elements. *McDonnell Douglas,* 411 U.S. 792, 800, 93 S.Ct. 1817, 1823, 36 L.Ed.2d 668 (1973), *Baz v. Walters,* 782 F.2d 701, 706 (7th Cir.1986). First, the plaintiff was a member of a protected class. Second, the plaintiff's job performance was satisfactory. Third, the plaintiff was fired. Fourth, after the plaintiff was fired, the plaintiff's former position remained open to similarly qualified applicants.

If the plaintiff shows these four elements, the burden shifts to the defendant to articulate some legitimate non-discriminatory rationale for the plaintiff's firing. *McDonnell Douglas,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Baz,* 782 F.2d 701, 706 (7th Cir.1986). If the defendant articulates a legitimate non-discriminatory rationale, the burden shifts back to the plaintiff to prove, by a preponderance of the evidence, that the firing was motivated by illegal discrimination. *McDonnell Douglas,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973); *Baz,* 782 F.2d 701, 706 (7th Cir.1986).

## IV. THE KNOWLEDGE REQUIREMENT

■ A knowledge requirement is logical and appropriate in religious discrimination cases because the plaintiff's membership in a protected class (e.g., a bona fide religion) is not readily discernible. In *Beasley v. Health Care Service Corp.,* a religious accommodation case, the court included a knowledge requirement as part of the proof required to establish a plaintiff's prima facie case: "To establish a prima facie case, a plaintiff must show that (1) the practices are religious in nature; (2) the employee called the religious practices to the employer's attention, and (3) the religious practices were the basis of the discharge." *Beasley v. Health Care Service Corp.,* 940 F.2d 1085, 1088 (7th Cir.1991). In *Redmond v. G.A.F. Corp.,* a religious accommodation case, the court included a knowl-

edge requirement as part of the proof required to establish a plaintiff's prima facie case: "Implicit within plaintiff's prima facie case is the requirement that plaintiff inform his employer of both his religious needs and his need for an accommodation." *Redmond v. G.A.F. Corp.,* 574 F.2d 897, 901 (7th Cir. 1978).

Although the court included a prima facie knowledge requirement for religious accommodation cases in *Beasley* and *Redmond,* the Magistrate has not found a case which specifically addresses a prima facie knowledge requirement for religious discharge cases. The Supreme Court has indicated that the prima facie requirements in Title VII discrimination cases are flexible. In *McDonnell Douglas,* the Court noted that "[t]he facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas,* 411 U.S. 792, 802, n. 13, 93 S.Ct. 1817, 1824, n. 13, 36 L.Ed.2d 668 (1973). Similarly, in *Furnco Construction Corp. v. Waters,* the Court stated that the elements of proof in employment discrimination cases were not meant to be "rigid, mechanized or ritualistic." *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). Accordingly, the proof required to establish a prima facie case under *McDonnell Douglas* can be adapted to specific fact scenarios. *Shapolia v. Los Alamos National Laboratory,* 992 F.2d 1033, 1037 (10th Cir. 1993) (citing, e.g., *E.E.O.C. v. Flasher Co.,* 986 F.2d 1312 (10th Cir.1992)).

The fact scenario of a religious accommodation case is very similar to the fact scenario of a religious discharge case. In *Beasley* and *Redmond,* the Seventh Circuit included a prima facie knowledge requirement for religious accommodation cases without speaking directly to religious discharge cases. *Beasley,* 940 F.2d 1085, 1088 (7th Cir.1991); *Redmond,* 574 F.2d 897, 901 (7th Cir.1978). The gender and race of a person are normally obvious, whereas the religion is not.

Therefore, the knowledge requirement is applicable to the instant case as part of Plaintiff's prima facie discharge framework.

## V. PLAINTIFF'S PRIMA FACIE CASE

### A. Plaintiff's Prima Facie Case, Elements Three and Four

For purposes of this motion, there is no dispute with regard to elements three and four. Under element three, Plaintiff must show that he was fired. Plaintiff was fired on November 2, 1994. Under element four, Plaintiff must show that his former position remained open to similarly qualified applicants. After Plaintiff was fired, he was apparently replaced by Dr. Sumant Mishra. (Plaintiff's memorandum of law in support of Plaintiffs answer to Defendants' motion for summary judgment at 6, hereinafter "Plaintiff's memo").

Therefore, element one, element two, and the knowledge requirement are at issue.

### B. Plaintiff's Prima Facie Case, Element One: Plaintiff's Religion

■ Under element one, Plaintiff must show that he was a member of a protected class (i.e., that he adhered to a bona fide religion). Plaintiff claims to adhere to the religion known as Wicca. Title VII defines "religion" as "all aspects of [an employee's] religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j). The E.E.O.C. has determined that the definition of "religion" includes established and organized faiths such as Roman Catholicism, Baptist, Presbyterian, Judaism, or Islam, as well as "moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views.... The fact that no religious group espouses such beliefs or the fact that the religious group to which the individual professes to belong may not accept such belief will not determine whether the belief is a religious belief of the employee...." 29 C.F.R. § 1605.1 (1990). Therefore, a religious belief does not have to be espoused by or accepted by any religious group to fall within the definition of "religion" under Title VII. Further, the Seventh Circuit has concluded that "the proper test to be applied to the determination of what is 'religious' under § 2000e(j)" is "(1) the 'belief' for which protection is sought is 'religious' in person's [sic] own

scheme of things, and (2) it is 'sincerely held.'" Redmond, 574 F.2d 897, 901, n. 12 (1978) (citing Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970); United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965)).

■ Plaintiff argues that he sincerely held a belief in the Wiccian religion at the time of his firing:

> Dr. Van Koten has testified that he had (and has) a sincerely-held, bona-fide belief in the Wiccian religion.... Dr. Van Koten's religious beliefs include, inter alia, a belief that Halloween is a holy day, respect for all life forms (consequently, Dr. Van Koten is a vegetarian, ... a belief in astrology, a belief in psychic abilities, and a belief in reincarnation).

(Plaintiff's memo at 7).

Accordingly, for purposes of this motion, the court concludes that there is no genuine issue of material fact regarding whether Wicca may be considered a Title VII "religion." For purposes of this motion, Wicca may be considered a belief which is sincerely held in the Plaintiff's "own scheme of things." See Redmond, 574 F.2d 897, 901 (7th Cir.1978). Further, for purposes of this motion, the court concludes that there is no genuine issue of material fact regarding whether Plaintiff adhered to the Wiccian religion at the time of his firing. Plaintiff has testified as to his sincerely held beliefs and has described his religious practices. (Plaintiff's memo at 7). Defendants have not challenged Plaintiff's assertions regarding his religious beliefs.

### C. Plaintiff's Prima Facie Case, Element Two: Plaintiff's Job Performance

Plaintiff testifies that his job performance was satisfactory. The Seventh Circuit has stated that [a] determination that an individual is performing a job well enough to meet an employer's legitimate expectations, when made in the context of a prima facie case, may be based solely upon the employee's testimony concerning the quality of his work. Williams v. Williams Electronics, Inc., 856 F.2d 920, 923, n. 6 (7th Cir.1988) (citing Yarbrough v. Tower Oldsmobile, Inc., 789 F.2d 508, 512 (7th Cir.1986)). Consequently,

for purposes of this motion, the court concludes that Plaintiff has satisfied this portion of his prima facie case.[1]

## D. Plaintiff's Prima Facie Case: The Knowledge Requirement

■ Defendants claim no knowledge of Plaintiff's religious beliefs: "The Defendants had no knowledge of the religious beliefs of the Plaintiff prior to his hiring or termination. The Defendants had no knowledge of the religious beliefs of the Plaintiff and inquiry was never made nor was the Plaintiff's claimed belief in the Wicca religion ever brought to the attention of the Defendants." (Defendants' motion for summary judgment at 1).

Plaintiff, on the other hand, argues that there is a genuine issue of material fact regarding Defendants' knowledge of Plaintiff's religion: "Despite Defendants' contentions to the contrary, there is substantial evidence in the record which creates a genuine issue of fact as to whether Defendants, and in particular [Duane] Meyers knew of Dr. Van Koten's religious beliefs before he was terminated on November 2, 1994."[2] (Plaintiff's memo at 9).

In Plaintiff's memo, Plaintiff discusses a statement he allegedly made at his place of employment: "[O]n October 31, 1994 ... Dr. Van Koten stated in front of and to several of his co-workers, including Chris Meinecke ('Meinecke'), Cheryl Wilkinson, Bonnie Lauff, and Randy Provick ('Provick'), that he considered Halloween to be the 'holiest day of the year in his religion.' " (Plaintiff's memo at 9). Plaintiff goes on to say that "[t]his statement was in no way ambiguous, and thus, was a clear expression of Dr. Van Koten's religious beliefs." (Plaintiff's memo at 9). However, Plaintiff's declaration to several co-workers that Halloween is a holy day in his religion does not necessarily result in Defendants' knowledge of Plaintiff's adherence to the Wiccian religion. Assuming Plaintiff made this statement, the persons who heard him may never have repeated it.

Therefore, this alleged statement does not create a genuine issue of material fact regarding Defendants' knowledge of Plaintiff's Wiccian religion.

Plaintiff attempts to avoid this problem by stating the following: "Although Dr. Van Koten did not *directly* tell Meyers that Halloween was the holiest day of the year in his religion, there is evidence to show that Meyers could well have been aware that Dr. Van Koten had made this statement [emphasis in original]." (Plaintiff's memo at 9). Plaintiff's assertion that Meyers "could well have been aware" of Plaintiff's Wiccian religion does not create a genuine issue of material fact regarding Defendants' knowledge of Plaintiff's Wiccian religion.

Plaintiff argues that "Meyers himself has testified that he had a close working relationship with Meinecke, clinic manager, one of the individuals to whom Dr. Van Koten made this statement.... Meinecke reported directly to Meyers.... Indeed, Meyers testified that he heard about Dr. Van Koten's alleged performance problems from reports that Meinecke made to him." (Plaintiff's memo at 9). Plaintiff also points out that Meyers had a working relationship with Provick. (Plaintiff's memo at 10). The court would expect Meyers to have a close working relationship with Meinecke and Provick. Further, the court would expect Meinecke, as clinic manager, to report performance problems to Meyers. Meyers' working relationship with employees does not create a genuine issue of material fact regarding Defendants' knowledge of Plaintiff's Wiccian religion.

Plaintiff argues that the time frame between his statement regarding Halloween on October 31, 1994, and his firing date of November 2, 1994, "is probative of the factual issue of whether Meyers was aware of Dr. Van Koten's religion." (Plaintiff's memo at 10). Plaintiff goes on to say that "on the day after Dr. Van Koten made this statement [regarding Halloween as a holy day], Meyers spent two to three hours with Provick in

---

1. Defendants claim that Plaintiff was fired because of his "profane refusal to follow procedures." (Defendants' 12 M(3) statement, ¶ 9).

2. Mr. Duane Meyers is apparently the individual who decided to fire Plaintiff. (Plaintiff's memo at 7).

Provick's office, with the door closed, thus, allowing ample opportunity for Provick to inform Meyers of the statement Dr. Van Koten had made the day before." (Plaintiff's memo at 10). The court does not view a meeting between Provick and Meyers as probative of anything. The court cannot simply infer that Provick and Meyers were discussing Plaintiff's Wiccian religion. A meeting between Provick and Meyers does not create a genuine issue of material fact regarding Defendants' knowledge of Plaintiff's Wiccian religion.

Plaintiff states that "[o]n previous occasions Provick made unsolicited comments to Dr. Van Koten about being 'brutally agnostic' and asked Dr. Van Koten probing questions regarding Dr. Van Koten's belief system.... Given Provick's apparent interest in Dr. Van Koten's religious beliefs, as evidenced by the questions and comments that Provick made to Dr. Van Koten, it is reasonable to confer [sic] that Provick conveyed this interest to others such as Meyers." (Plaintiff's memo at 10). The court disagrees. The court cannot infer that a person made a statement without evidence of that statement. Provick's alleged statement regarding his agnostic beliefs does not create a genuine issue of material fact regarding Defendants' knowledge of Plaintiff's Wiccian religion. Further, Provick's alleged questions about Plaintiff's beliefs do not create a genuine issue of material fact regarding Defendants' knowledge of Plaintiff's Wiccian religion.

Plaintiff states that "there is other evidence to show that Defendants, and in particular Meyers, were aware of Dr. Van Koten's religious beliefs even though Dr. Van Koten did not specifically or directly label himself as 'Wiccian.'" (Plaintiff's memo at 10). Plaintiff discusses a statement regarding his diet: "For instance on or about October 15, 1994, Dr. Van Koten had a conversation over lunch with Meyers. At that time, Dr. Van Koten mentioned to Meyers that he had purchased a vegetarian meal because he was a vegetarian due to his religious beliefs." (Plaintiff's brief at 10). However, Plaintiff's alleged statement regarding his diet does not create a genuine issue of material fact re-

garding Defendants' knowledge of Plaintiff's Wiccian religion.

Plaintiff also states that "[o]n the computer in his office, Dr. Van Koten installed a program through which he prepared astrology charts during non-business hours.... He offered co-workers, and they often requested, astrology charts and his oral interpretations of these charts for themselves and their families." (Plaintiff's memo at 11). Plaintiff goes on to say that "[a]s part of his interpretation of these charts he would make 'reference to the sun as the father and the moon as the mother and give them a deity status,' thereby, communicating that he believed the sun and the moon to be gods." (Plaintiff's memo at 11). Plaintiff argues that these statements, allegedly made in the presence of Sheryl O'Brien and Bonnie Lauff, caused the Defendants to be aware of his Wiccian religion. However, these alleged statements do not create a genuine issue of material fact regarding Defendants' knowledge of Plaintiff's Wiccian religion. There is no evidence that Sheryl O'Brien or Bonnie Lauff ever reported these astrology sessions or any statements made by Plaintiff to the Defendants.

Plaintiff states that "on or about October 20, 1994, during non-business hours, Meyers observed a crowd of people gathered in and around Dr. Van Koten's office as he was working on astrology charts. At that time, Meyers walked up to the office doorway and briefly looked in, and asked what was happening. A staff member informed Meyers of what was transpiring. Consequently, conflict of material facts exist which warrant jury determination." (Plaintiff's memo at 11). Assuming, arguendo, that Meyers observed a crowd of people and was informed that they were looking at astrology charts, this occurrence does not create a genuine issue of material fact regarding Defendants' knowledge of Plaintiff's Wiccian religion.

Therefore, there is no genuine issue of material fact regarding Defendants' knowledge of Plaintiff's Wiccian religion. The knowledge requirement is an essential element of Plaintiff's prima facie case. According to Celotex, "a complete failure of proof concerning an essential element of the non-

moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Plaintiff has not set forth specific facts which show that Defendants were aware of his religious beliefs. *See* Fed. R.Civ.P. 56(e); *Matsushita*, 475 U.S. 574, 586–587, 106 S.Ct. 1348, 1355–1356, 89 L.Ed.2d 538 (1986). Therefore, Defendants are entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

## VI. CONCLUSION

For the reasons articulated above, Defendants' motion for summary judgment is hereby granted.