**U.S. EQUAL EMPLOYMENT OPPOR-
TUNITY COMMISSION, Plaintiff,**

v.

**IBP, INC., Defendant.**

No. 92–4034.

United States District Court,
C.D. Illinois,
Rock Island Division.

May 7, 1993.

148

John C. Hendrickson, Gordon G. Waldron, EEOC, Chicago, IL, for plaintiff.

Michael N. Petkovich and Paul R. Garry, Katten Muchin & Zavis, Chicago, IL, for defendant.

## *ORDER*

McDADE, District Judge.

### I. INTRODUCTION

On May 8, 1992, the Equal Employment Opportunity Commission, [EEOC], filed this action on behalf of Plaintiff,[1] Richard Boyer, pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.,* Title VII. The EEOC alleges that Defendant, IBP, Inc., discriminated against Plaintiff on the basis of his religious beliefs and practices as a Seventh Day Adventist, in violation of Sections 701(j) and 703(a) of Title VII, 42

---

1. The EEOC claims that Plaintiff filed his charge with the EEOC "more than thirty days" prior to the institution of this lawsuit. The EEOC does not indicate whether Plaintiff's claim was filed within the 180-day limit imposed by 42 U.S.C. § 2000e-5(e) or the 300-day extension for "deferral states." *Id.* In "deferral states," a state or local agency is authorized to grant relief from unlawful employment practices. *Gilardi v. Schroeder,* 833 F.2d 1226 (7th Cir.1987). Illinois is a deferral state. *See* Ill.Rev.Stat. ch. 68, ¶ 7-101, and 29 C.F.R. § 1601.80. Since IBP has not raised any objections, the Court will assume that the charge was timely filed.

U.S.C. § 2000e–(j) and § 2000e–2(a)(1), by discharging him after he refused on religious grounds to work on Saturdays, as scheduled, and to find a replacement for his shift. Jurisdiction and venue are proper. 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.

· Before the Court is IBP's Motion for Summary Judgment, alleging:· (1) that Plaintiff cannot make out a *prima facie* case of religious discrimination under Title VII because Plaintiff's beliefs were not sincere, and (2) that even if Plaintiff has established a *prima facie* case, IBP fulfilled its statutory duty to accommodate Plaintiff's religious beliefs and practices by offering to allow Plaintiff to trade shifts with another employee. After careful review, the Court finds that the Motion For Summary Judgment must be DENIED because genuine ·issues of. material fact exist with respect to both theories.

Federal Rule 56(c) Summary Judgment is appropriate when there remains no genuine issue of material fact upon which a reasonable jury could find in favor. of the non-moving party, and the moving party is entitled to judgment as a matter of law. · Although the moving party on a motion for summary judgment is responsible for demonstrating to the Court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file, to show that a rational jury could return a verdict in this party's favor. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–27, 106 S.Ct. 2548, 2552–55, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254–55, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Mat-*

*sushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 ·U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The Court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510. *Beraha v. Baxter Health Corp.,* 956 F.2d 1436, 1440 (7th Cir. 1992). Disputed facts· are material when they might affect the outcome of the suit. *First Ind.·Bank v. Baker,* 957 F.2d 506, 507–08 (7th Cir.1992). A metaphysical doubt will not suffice. *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356.

## II. THE FACTS

On January 13, 1986, IBP hired Plaintiff, Richard Boyer, as a "clod trimmer" for its Joslin, Illinois, beef processing plant. Several months later, IBP promoted Plaintiff to the position of "Chuck Boner"[2] on the "A" Shift, which worked from 6:00 a.m. to 2:30 p.m. The "B" Shift worked from 3:00 p.m. to 11:00 p.m.[3] Plaintiff worked on scheduled Saturdays for IBP from the date of his hire until Plaintiff became a Seventh Day Adventist in December 1988.[4] After his conversion in December 1988, Plaintiff notified the Personnel Manager, Tom Udell, that he could no longer work on Saturdays for religious reasons. A tenet of the· Seventh Day Adventist religion is that members may not work on the Sabbath, observed from sunset Friday to sunset Saturday. Plaintiff's Pastor also sent a letter to IBP confirming that Plaintiff's religious belief was a practice of the Seventh Day Adventist Church.

Plaintiff's observance of the Sabbath did not conflict with his work schedule prior to

---

2. IBP's Joslin plant has three divisions: processing, slaughter, and hides. A chuck boner works in the processing division. After a head·of cattle is slaughtered, the carcass comes to the processing division to ·be cut up and divided up into various portions and products. The chuck line is the first line to which the carcass goes. A chuck boner pulls out the strip of fat which goes to the rendering line, bones out the neck bone, turns the carcass over, and pulls off the neck bone, physically separating the neck bone from the meat through a series of knife cuts. This is a skilled position that apparently not every employee at IBP is qualified to perform.

3. The EEOC cites IBP's brief for its claim that the "B" shift worked from 2:30 p.m. to 11:30 p.m. However, IBP's brief states that the shift worked from 3:00 p.m. to 11:00 p.m. Because this factual discrepancy is not material, the Court will adopt IBP's statement because IBP is in a better position to know the time of its scheduled shifts, as evidenced by Plaintiff's citation to IBP's brief. Apparently, the discrepancy arises because the line closes down for 45 minutes between the two shifts. (Tague Dep. at 69, Exhibit 2 IBP).

4. Plaintiff does not dispute IBP's contention that Saturday work· is scheduled by the corporate office only as needed. (IBP brief at 4 n. 4).

April 8, 1989, because IBP's corporate office had not scheduled Saturday work from December 1988 to April 8, 1989. However, when IBP's corporate office notified the Joslin Plant to schedule Saturday work for April 8, 1989, Tom Udell and Plaintiff's Supervisor, Dennis Tague, apparently foreseeing a conflict, met with Plaintiff to discuss ways to accommodate Plaintiff's religious belief. IBP offered to accommodate Plaintiff by allowing him to trade shifts with a co-worker on the "B" shift.[5] Tague also offered to accompany Plaintiff to the production floor while Plaintiff sought a replacement. Plaintiff then informed Udell and Tague that he considered it a sin to ask someone to work for him on the Sabbath, although Plaintiff conceded that he would allow IBP to arrange a shift swap for him.

Plaintiff failed to report for work on Saturday, April 8, 1989, and received an unexcused absence because a replacement was not found. Plaintiff also received a written warning that unexcused absences would result in discipline. After his second unexcused absence, Plaintiff was suspended for one day. Plaintiff was discharged after his third unexcused absence,[6] pursuant to company policy.[7] Immediately after his discharge, Plaintiff was awarded unemployment compensation.[8] Plaintiff then held a series of jobs, including one for which he was terminated after his refusal to work on Saturdays. Sometime in July or August of 1990, however, Plaintiff began attending classes at a truck driving school on Friday evenings; and in 1991, Plaintiff agreed to drive a truck for his employer on a Saturday.[9] When asked why he broke the Sabbath, Plaintiff replied that he had "lost faith" in 1990.

---

5. Plaintiff does not dispute IBP's restriction limiting the pool of employees available as replacements to the "B" shift, since the 1984 collective bargaining agreement requires that IBP pay time and one-half (1–1/2) to all employees who work in excess of their 4 day, ten hour shifts. (CBA at 15, section 3).

6. Plaintiff was discharged on April 23, 1989.

7. IBP's attendance policy states that after three unexcused absences in 12 months an employee will be terminated.

## II. DISCUSSION

IBP contends that summary judgment must be granted in its favor because the Plaintiff cannot demonstrate the requisite sincerity of his religious beliefs, as a matter of law. Alternatively, IBP contends that even if Plaintiff has established a *prima facie* case of religious discrimination, IBP has fulfilled its statutory obligation of reasonable accommodation, as a matter of law.

### A. The Prima Facie Case

■ Analysis of a religious discrimination case begins with the question of whether the employee has established a *prima facie* case of religious discrimination. A *prima facie* case is established when an employee shows that he or she: (1) holds a sincere religious belief that conflicts with an employment requirement; (2) has informed the employer about the conflict; and (3) was discharged or disciplined for failing to comply with the conflicting employment requirement. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 65–66, 107 S.Ct. 367, 372, 93 L.Ed.2d 305 (1986); *Turpen v. Missouri–Kansas–Texas R.R. Co.*, 736 F.2d 1022, 1026 (5th Cir.1984).

IBP's challenge to the sincerity of Plaintiff's belief can be disposed of quickly. The Supreme Court defines a religious belief as "not merely a matter of personal preference, but one of deep religious conviction, shared by an organized group, and intimately related to daily living." *Wisconsin v. Yoder*, 406 U.S. 205, 215–216, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15 (1972). IBP claims that although society recognizes the Seventh Day Adventist Church as an organized religious group, Plaintiff cannot prove that his belief in the sanctity of the Sabbath, as taught by that

---

8. *See generally Frazee v. Illinois Dept. of Employment Security*, 489 U.S. 829, 109 S.Ct. 1514, 103 L.Ed.2d 914 (1989), holding that a person who refuses to work for religious reasons is entitled to unemployment compensation.

9. IBP claims that Plaintiff volunteered to drive this truck. The EEOC contends that Plaintiff's testimony on this point is "unclear." The dispute appears to focus on whether Plaintiff volunteered to work rather than the fact that Plaintiff did in fact work on a Saturday after being fired by IBP. (IBP brief at 9; Boyer dep. at 193).

religion, was sincere and intimately related to his daily living for two reasons.

First, IBP argues that Plaintiff's abandonment of his faith sixteen (16) months after acquiring it is "irrefutable evidence" under *Wisconsin v. Yoder,* 406 U.S. 205, 215–216, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15 (1971) and *Hansard v. Johns–Manville Products Corp.,* 5 FEP Cas. (BNA) 707, 709 (E.D.Tex.1973) that his religious beliefs were not sincere at the time IBP discharged him. Second, IBP contends that Plaintiff's beliefs were insincere because he acted in a manner inconsistent with these beliefs by attending Friday evening classes in 1990 and agreeing to work on Saturdays in 1991 and 1992. These arguments are meritless.

■ Plaintiff's absence of faith prior to December 1988 and his loss of faith in 1990 do not prove that his beliefs were insincere in April 1989. The Court has not found, and IBP has not cited, any case in which a court found that the length of time a person held a belief was relevant to determine the question of sincerity, and this Court will not be the first to do so. Instead, the Court finds that sincerity should be measured by the employee's words and conduct at the time the conflict arose between the belief and the employment requirement.

With this standard in mind, the evidence appears fairly consistent. In December 1988, Plaintiff notified IBP that his religious belief would prevent him from working on Saturdays, even though IBP was not scheduling Saturday work at that time. Plaintiff's confession of belief therefore appears to have been motivated by conviction rather than convenience. Further, when IBP received notice of the Saturday work schedule in April 1989, Tom Udell and Dennis Tague initiated contact with Plaintiff to discuss possible accommodations before posting the schedule for the upcoming weekend. This evidence indicates that management had accepted Plaintiff's belief as sincere prior to the conflict.

Although IBP claims that the facts of this case are similar to the case of *Hansard v. Johns–Manville Products Corp.,* 5 FEP Cas. (BNA) 707, 709 (E.D.Tex.1973), it is clear that they are not. In *Hansard,* the discharged employee, alleging religious discrimination, worked on Sundays prior to his religious conversion but then refused to work on several Sundays during his term of employment for religious reasons. When confronted with his deposition testimony at trial, the employee admitted that he worked on some Sundays, but not others, because he had "lost faith" on those days.

In this case, although the Plaintiff worked on Saturdays prior to his conversion, he never worked on a Saturday after his conversion and prior to his discharge from IBP, nor did he lose faith on some days as opposed to others, in contrast to the plaintiff in *Hansard.* After Plaintiff's conversion in 1988, Plaintiff appears to have faithfully observed his Sabbath even though he was discharged from two jobs to honor this belief. The Court believes that Plaintiff's admitted loss of faith in 1990 does not affect the sincerity of his belief prior to that time.

Finally, although some courts have held that "an adherent's belief [is] not sincere if he acts in a manner inconsistent with that belief," *International Society for Krishna, Etc. v. Barber,* 650 F.2d 430, 441 (2nd Cir. 1981), the inconsistent behavior IBP alleges is dispelled by Plaintiff's testimony that he did not begin attending classes on Friday evenings in 1990 and working on Saturdays in 1991 and 1992 in spite of his faith, but because he had "lost faith" in 1990. Further, even if these actions may be characterized as inconsistencies, IBP's allegations "do not compel a conclusion that [the employee's] beliefs were insincere as a matter of law." *EEOC v. University of Detroit,* 701 F.Supp. 1326 (E.D.Mich.1988) *reversed on other grounds, EEOC v. University of Detroit,* 904 F.2d 331, 334–35 (6th Cir.1990).

The EEOC argues that "resolution of [the] issue of sincerity must await trial," because "[t]he need for a full exposition of the facts is profound." *Patrick v. LeFevre,* 745 F.2d 153, 158 (2nd Cir.1984). The Court finds that the facts do not warrant summary judgment in favor of IBP and thus will allow the jury to determine whether Plaintiff's religious belief was sincere. For purposes of this motion, however, inferential disputes

created by the record warrant a finding that Plaintiff has established a *prima facie* case to defeat summary judgment.

### B. *Reasonable Accommodation*

Once the employee has established a *prima facie* case, the burden shifts to the employer to prove that it cannot reasonably accommodate the employee without incurring undue hardship. *Ansonia Bd. of Educ. v. Philbrook,* 479 U.S. 60, 65–66, 107 S.Ct. 367, 372, 93 L.Ed.2d 305 (1986). Title VII provides in part that "[i]t shall be an unlawful employment practice for an employer (1) to ... discharge any individual ... because of such individual's ... religion...." 42 U.S.C. § 2000e–2(a)(1) (1992). When Congress amended Title VII in 1972, it added the following definition of religion:

> The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's ... religious observance or practice without undue hardship on the conduct of the employer's business.

42 U.S.C. § 2000e(j) (1992). Thus, "the employer's statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship, is clear, but the reach of that obligation has never been spelled out by Congress or by EEOC guidelines." *TWA v. Hardison,* 432 U.S. 63, 75, 97 S.Ct. 2264, 2276, 53 L.Ed.2d 113 (1977).

■ The reach of an employer's obligation depends upon whether a proposed accommodation is reasonable; however, the "reasonableness" of a proposed accommodation must be determined on a case by case basis. *Redmond v. GAF Corp.,* 574 F.2d 897, 902–03 (7th Cir.1978); *Smith v. Pyro Min. Co.,* 827 F.2d 1081, 1085 (6th Cir.1987); *EEOC v. Universal,* 914 F.2d 71 (5th Cir. 1990). Generally, an employer's offer to allow the employee to trade shifts with a qualified replacement is considered a reasonable accommodation in cases where employees merely refuse to work on a particular day for religious reasons. *Brener v. Diagnostic Center Hospital,* 671 F.2d 141 (5th Cir.1982); *United States v. City of Albuquerque,* 545

F.2d 110 (10th Cir.1976); *Moore v. A.E. Staley Mfg.,* 727 F.Supp. 1156 (N.D.Ill.1989); *Meadows v. Golden Grain Macaroni Co.,* 1987 WL 46233 (N.D.Ill.1987). However, in cases where employees have refused to work on a particular day for religious reasons, but also claim that they cannot ask another employee to work on that day for the same reasons, the question becomes whether Title VII requires the employer to accommodate both beliefs, and if so, whether "an employer reasonably accommodates an employee by allowing the employee to arrange a shift trade himself when the employee considers it a sin to arrange such a swap." *Smith v. Pyro Min. Co.,* 827 F.2d 1081, 1088 (6th Cir.1987).

■ Where an employee has more than one religious belief which conflicts with work requirements, the employer must accommodate both beliefs. *EEOC v. Universal Mfg. Corp.,* 914 F.2d 71 (5th Cir.1990); *EEOC v. University of Detroit,* 904 F.2d 331 (6th Cir. 1990). In cases like this one, the obligation to accommodate both beliefs means that when an employer proposes to accommodate an employee's belief by allowing a shift trade "an attempt at accommodation [which] requires the employee to seek his own replacement is not reasonable." *Smith,* 827 F.2d at 1088. In these cases, Title VII imposes an additional obligation upon the employer to "make further attempts at accommodating the employee." The reach of this additional obligation is not certain but appears to be based on the facts of each case.

In *Smith v. Pyro Min. Co.,* 827 F.2d 1081, 1088 (6th Cir.1987), the employer argued that any further attempt to accommodate the employee beyond allowing him to trade shifts would impose an undue hardship. The Court rejected this claim, affirming the district court's conclusion that the employer could have orchestrated a shift swap without undue hardship, since the employer had previously taken an active role in contacting employees to participate in shift trades by posting notices on the company bulletin board or in the monthly newspaper. The Circuit Court thus concluded that the employer could have reasonably accommodated the employee's dual

beliefs by soliciting replacements in the same manner.

■ Although the employer carries the ultimate burden to accommodate the employee's religious needs, the employee must make some effort to cooperate with an employer's attempt at accommodation so that an accommodation is not impossible to reach. *Redmond v. GAF Corp.*, 574 F.2d 897, 902–03 (7th Cir.1978); *Brener v. Diagnostic Center Hospital*, 671 F.2d 141, 145–56 (5th Cir.1982); *Smith v. Pyro Min. Co.*, 827 F.2d 1081, 1085 (6th Cir.1987). *See generally Ansonia Bd. of Education v. Philbrook*, 479 U.S. 60, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986) (implying that the employee must cooperate with the employer by accepting the accommodation offered by the employer if it is reasonable). Nonetheless, the employer "cannot excuse [its] failure to accommodate by pointing to deficiencies in [the employee's] suggested accommodation." *Anderson v. General Dynamics Convair Aerospace Div.*, 589 F.2d 397, 401 (9th Cir.1978); *Toledo v. Nobel–Sysco, Inc.*, 892 F.2d 1481, 1489 (10th Cir. 1989). If the employer's efforts fail to eliminate the employee's religious conflict, the burden remains on the employer to establish that it is unable to reasonably accommodate the employee's religious beliefs without incurring undue hardship. *Smith v. Pyro*, 827 F.2d 1081, 1085 (6th Cir.1987) (citing cases).

■ Ultimately, determination of whether an employer's proposed accommodation was "reasonable" is a question of fact for the jury, rather than a question of law for the court. *Redmond v. GAF Corp.*, 574 F.2d 897, 902–03 (7th Cir.1978). In this case, however, the Court believes that this question involves mixed questions of law and fact. The legal question is whether the obligation to reasonably accommodate Plaintiff's religious beliefs required IBP to do more than merely "allow" Plaintiff to trade shifts with another employee. The Court finds that IBP was obligated to accommodate Plaintiff's belief that he should not ask another employee to work in his place on Saturday. This additional obligation thus required IBP to "make further efforts" to accommodate Plaintiff, be-

yond merely "allowing" Plaintiff to seek his own replacement. *Smith v. Pyro*, 827 F.2d 1081, 1085 (6th Cir.1987). The question of fact concerns the extent of the obligation and the means of satisfying it; these questions must be determined by the jury. In some cases, the employer may be required to post notices on bulletin boards or in a company newsletter; in other cases, the employer may be required to solicit replacements through management. Given the legal standard adopted by the Court from *Smith*, IBP must prove that it made some effort to solicit employees for Plaintiff. However, the manner and extent of this obligation is a question for the jury.

■ Although the Court may enter judgment if the facts of a case are so one-sided that no reasonable jury could find in favor of the non-moving party, this is not that case. Rather, the Court is denying IBP's Motion for Summary Judgment, because it finds that material facts are in dispute with respect to the issue of reasonable accommodation, creating genuine issues for the jury.

The primary dispute of fact concerns whether Dennis Tague actually solicited replacements for Plaintiff's first absence on April 8, 1989. IBP has submitted Tague's deposition testimony alleging that he asked every qualified employee on the "B" shift to trade places with Plaintiff and was turned down by each. Plaintiff, on the other hand, submits an affidavit by Renadar Curtis, an investigator with the EEOC, who alleges that Dennis Tague stated that "he did *not* ask other production employees if they would replace Richard Boyer for Saturday work."

Finally, IBP's argument that Plaintiff refused to cooperate with IBP's accommodation efforts by failing to seek his own replacement is misconceived. IBP was obligated to accommodate both of Plaintiff's religious beliefs. This means that if IBP merely allowed Plaintiff to find his own replacement, then IBP may have failed to satisfy its obligation under Title VII, unless it can show that it could not solicit replacements for Plaintiff without undue hardship.[10] Although "bilat-

10. In some cases, an accommodation is impossible to reach due to the constraints imposed by a collective bargaining agreement's "seniority system provisions." In these cases, courts have

eral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employer's religion and the exigencies of the employer's business," *Ansonia Bd. of Education v. Philbrook*, 479 U.S. 60, 69, 107 S.Ct. 367, 372, 93 L.Ed.2d 305 (1986), an employer may not offer to accommodate one belief by asking an employee to compromise the other and then claim that the employee failed to cooperate. Title VII places the obligation upon the employer to initiate an accommodation and to ensure that an accommodation is reached. Bilateral cooperation is not a statutory duty; it is a court created doctrine based upon the "mutuality of obligation [which] inheres in the employer-employee relationship." *Redmond v. GAF Corp.*, 574 F.2d 897, 902–03 (7th Cir.1978), *citing Chrysler Corp. v. Mann*, 561 F.2d 1282, 1285 (8th Cir.1977). Although an employee's failure to cooperate with an employer's efforts at accommodation may, in some cases, "render an accommodation impossible," the duty to cooperate must ultimately give way to an employee's conviction and the need to avoid compromise of the beliefs which Title VII was enacted to protect. In this case, an accommodation was not rendered impossible by Plaintiff's refusal to cooperate, but by IBP's alleged failure to "make further efforts" to accommodate Plaintiff's religious beliefs.

### C. *Undue Hardship*

■ The question of whether a proposed accommodation imposes an "undue hardship" on the employer does not arise unless the employer alleges that it was unable to accommodate an employee's religious beliefs. "Thus, where the employer has already reasonably accommodated the employee's religious needs, the statutory inquiry is at an end." *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68, 107 S.Ct. 367, 372, 93 L.Ed.2d 305 (1986). The Court does not

reach the issue of undue hardship in this case, because the question of whether IBP satisfied its duty of reasonable accommodation remains unresolved. Nonetheless, if IBP fails to prove that it made an effort to solicit replacements for Plaintiff, then it will need to show that it was unable to accommodate Plaintiff's beliefs without undue hardship. Because this issue may become important at trial, the Court will briefly state what it considers to be the law on this point.

■ Undue hardship is defined as more than a *de minimis* cost. *TWA v. Hardison*, 432 U.S. 63, 75, 97 S.Ct. 2264, 2272, 53 L.Ed.2d 113 (1977). 29 C.F.R. § 1605.-2(e)(1). The EEOC interprets this phrase, as used in *Hardison*, to mean "costs similar to the *regular* payment of premium wages" for a substitute. Infrequent payments made on a temporary basis and administrative costs associated with implementing an accommodation are considered *de minimis*, although the ultimate determination is made with "due regard given to the identifiable cost in relation to the size and operating cost of the employer." 29 C.F.R. § 1605.2(e)(1). The Sixth Circuit has noted that:

> [A]n employer does not sustain his burden of proof merely by showing that an accommodation would be bothersome to administer or disruptive of the operating routine. In addition, we are somewhat skeptical of hypothetical hardships that an employer thinks might be caused by an accommodation that has never been put into practice. The employer is on stronger ground when he has attempted various methods of accommodation and can point to hardships that actually resulted.

*Draper v. United States Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir.1975). An employer may nonetheless produce evidence which establishes that the suggested accommodation would create an undue hardship

held that an employer is not required to arrange a shift trade to accommodate an employee's religious beliefs because the duty under Title VII does not require an employer to take steps "inconsistent with [an] otherwise valid agreement." *TWA v. Hardison*, 432 U.S. [cite] at 79, 97 S.Ct. at 2274. In *Hardison,* the Supreme Court stated that seniority systems already represent "a significant accommodation to the needs, both religious

and secular, of all … employees." *Id.* at 78, 97 S.Ct. at 2274. See *Moore v. A.E. Staley Manufacturing Co.,* 727 F.Supp. 1156 (N.D.Ill.1989); *Blair v. Graham Correctional Center,* 782 F.Supp. 411 (C.D.Ill.1992); *Meadows v. Golden Grain Macaroni Co.,* 1987 WL 46233 (N.D.Ill.1987); *Brener v. Diagnostic Center Hosp.,* 671 F.2d 141 (1982).

without implementing it. *Smith v. Pyro Min. Co.*, 827 F.2d 1081, 1086 (6th Cir.1987) (citing cases).

### III. CONCLUSION

IBP's Motion for Summary Judgment [Doc. # 7–1] is **DENIED.** This case is referred to the Magistrate for further proceedings and a final pretrial order.