**NOT RECOMMENDED FOR PUBLICATION**
File Name: 06a0138n.06
Filed: February 21, 2006

No. 05-1099

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **JEFFREY L. CARTER,** | ) | |
| | ) | |
| Intervenor, | ) | **ON APPEAL** FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ROBERT BOSCH CORP.,** | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE:     MERRITT, MARTIN, and GILMAN, Circuit Judges

**MERRITT, Circuit Judge.** This is a religious discrimination case under Title VII of the Civil Rights Act of 1964, as amended in 1972, 42 U.S.C. § 2000e(j), brought by the EEOC on behalf of Jeff Carter, who was discharged by the defendant Bosch (an automobile parts manufacturer), on September 16, 2002, after four unexcused absences on Saturdays, his day of worship. The only question presented on appeal is whether the employer has "demonstrated," within the meaning of the statute, "that he is unable to *reasonably accommodate* to an employee's . . . religious observance

or practice without undue hardship on the conduct of the employer's business." The District Court granted summary judgment for the company, holding that there is no dispute of material facts about Carter's claim that Bosch unreasonably refused to accommodate the employee's religion. We conclude that there is a factual dispute about Bosch's willingness to "reasonably accommodate" Carter's "religious observance," and that the District Court erred in holding as a matter of law that the employer had carried its burden in showing that it reasonably accommodated its business to Carter's religious observance.

## I.

Carter, the employee, was employed by Bosch for 25 years beginning in July 1977, and until January 2002 worked in the foundry casting parts. He was a member of the Old Path Church of God, which observes its Sabbath from sundown on Friday until sundown on Saturday. Throughout the 25-year period the company, through one of its supervisors, accommodated Carter's desire not to work on his Sabbath by finding volunteers when necessary.

In April 2002, Carter was able to bid for a position on the third shift in the machine shop where he was initially scheduled to work Sunday through Thursday, thus avoiding any conflict with his religious beliefs. Then in July of 2002, for business reasons resulting from a "temporary plant shut-down," the machine shop went in a so-called "100% situation" in which it was operating 24 hours a day seven days a week, and each person was assigned to work overtime. As a result, Carter was assigned a mandatory overtime shift from 11:00 P.M. on Friday to 7:00 A.M. on Saturday, obviously in conflict with his Sabbath observance. The company put the burden on Carter and his union to find a substitute. They were unable to do so, and Carter was fired. Following unsuccessful

negotiations regarding Carter's return to work, this litigation ensued. Carter now appeals the District Court's grant of summary judgment in favor of Bosch.

## II.

### A.

We review a district court's grant of summary judgment *de novo*. *Nat'l Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(c)). We must take the facts in the light most favorable to the non-moving party. *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1000 (6th Cir. 2005).

### B.

Following an employee's establishment of a *prima facie* case of religious discrimination, *see Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987), 42 U.S.C. § 2000e(j) puts the burden on the employer "to (1) conclusively rebut one or more elements of the plaintiff's *prima facie* case, (2) show that it offered a reasonable accommodation, or (3) show that it was unable reasonably to accommodate the employee's religious needs without undue hardship." *Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1156 (10th Cir. 2000); *see also Smith*, 827 F.2d at 1085. It is undisputed that Carter has established a *prima facie* case of discrimination. The only issue on appeal is whether there was a material dispute of fact about whether Bosch reasonably accommodated Carter's religious beliefs.

The reasonableness of an employer's attempt at accommodation must be determined on a case-by-case basis and is generally a question of fact for the jury, rather than a question of law for the court. *See Smith*, 827 F.2d at 1085; *Redmond v. GAF Corp.*, 574 F.2d 897, 902-03 (7th Cir. 1978); *EEOC. v. IBP, Inc.*, 824 F. Supp. 147, 153 (C.D. Ill. 1993). In general, "one means of accommodating an employee who is unable to work on a particular day due to religious convictions is to allow the employee to trade work shifts with another qualified employee." *Smith*, 827 F.2d at 1088; *see also* Debbie N. Kaminer, *Title VII's Failure to Provide Meaningful and Consistent Protection of Religious Employees: Proposals for an Amendment*, 21 Berkeley J. Emp. & Lab. L. 575, 605 (2000) (citing cases). Merely granting employees permission to find volunteers to swap shifts, however, does not definitively constitute "reasonable accommodation" as a matter of law in all cases. In *Smith*, 827 F.2d at 1088, this Court held that such an arrangement was not a reasonable accommodation because the employee believed that it was a sin to ask another to work for him. Similarly, in *McGuire v. Gen. Motors Corp.*, 956 F.2d 607, 610 (6th Cir. 1992) (per curiam), our Court held that a jury question existed as to whether allowing voluntary shift swaps constituted reasonable accommodation in light of the employer's circulation of surveys that allegedly made it "virtually impossible" to find replacements. In addition to allowing voluntary shift swaps, some employers have curried favor with affirmative actions like holding meetings with the employee, attempting to find the employee another job, supplying the employee with a roster sheet containing the schedules of co-workers, and allowing the employee to advertise his need for shift swaps during daily roll calls and on the employer's bulletin board. *See Trans World Airlines, Inc. v. Hardison*,

432 U.S. 63, 77 (1977); *Beadle v. Hillsborough County Sheriff's Dep't*, 29 F.3d 589, 593 (11th Cir. 1994); *Cowan v. Gilless*, No. 95-5679, 1996 WL 145873, at *1 (6th Cir. 1996) (per curiam).

On the other hand, "a week-to-week, wait-and-see posture" amounts to no accommodation at all. *EEOC v. Arlington Transit Mix, Inc.*, 957 F.2d 219, 222 (6th Cir. 1991). Nor is the statute satisfied by "an ad hoc arrangement contemplating that the inevitable collision between [the employee's] religious beliefs and the company's new work schedule would be dealt with when it arose." *Id.* This Court has also made clear that "[a]n employer who permits an employee to avoid mandatory Sabbath work only by using accrued vacation does not 'reasonably accommodate' the employee's religious beliefs." *Cooper v. Oak Rubber Co.*, 15 F.3d 1375, 1379 (6th Cir. 1994).

The instant case presents a genuine dispute of material fact as to what Bosch was willing to do in order to accommodate Carter. According to Carter, the only thing that the employer was willing to do was to let Carter and the union try to find someone who would work additional overtime. It is unclear exactly what the company was willing to do with respect to "swapping" overtime with other employees. Some of the evidence suggests that the company did nothing more than allow Carter to find another employee who would agree to work additional overtime. The EEOC maintains that the employer did not permit Carter to "swap shifts," and that in granting the summary judgment the District Court "overlooks the evidence that Bosch officials on at least two occasions stated that a shift *swap* would not be permitted in the machine shop." Appellant's Final Brief at 21. According to the EEOC, the employer's policy was designed only to identify employees willing to work *additional* shifts but not to swap shifts. "Because persons willing to work additional shifts are not necessarily the same as those willing to swap their overtime shift with an overtime shift

of another worker, the procedures Bosch provided were inadequate." *Id.* at 21-22. There appears to be a factual conflict about whether Bosch was only willing to allow Carter to find volunteers willing to take on Carter's overtime, or to find volunteers who would "swap" overtime shifts. There seems to be no dispute that the company itself was unwilling to try to find swaps or substitutes for Carter.

Carter, the EEOC and the Union claim that as a result of the across-the-board overtime requirement, many employees complained and sought relief from the company. The company's uniform response was to require the employee to find someone else to work the overtime. It apparently made no distinction between Carter and others who had no religious reasons for asking for an accommodation.

On pages 111 and 112 of the Appendix, the Union Steward, who also worked in the machine shop, Sharene Tyler, states that the employer through the representative of the Company's human resources department, Benson James, would not allow shift swapping to help Carter on his overtime shift and that the company apparently would not allow "out of class" (meaning the foundry or other departments than the machine shop) swaps. The Union Steward says that Bosch would not seek or assist in seeking workers from other departments who qualified for Carter's overtime work, nor would the employer try to find employees of the machine shop to swap the overtime shift with Carter. Benson James does not appear to deny this. Benson James declined to have a meeting with the Union and Carter to try to reach some accommodation. He simply put the question of accommodation on the shoulders of the Union and Carter. That much is clear from Benson's e-mail found on page 297 of the Appendix.

In light of the conflicting evidence about what the company was willing to do to accommodate Carter's Sabbath observance, we must reverse the summary judgment and remand the case to the District Court for trial. The plaintiff has asked for a jury trial on factual issues. Based on the dispute of fact about how far the company was willing to go to help Carter observe his Sabbath, the jury should be allowed to determine these issues. It should be allowed also to determine the factual question of whether the employer has met the terms of the statute by demonstrating "that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business."

Accordingly, it is so ORDERED.