Alexander SHAPOLIA, Plaintiff–Appellant,

v.

LOS ALAMOS NATIONAL LABORATORY, and John Whetten, Defendants–Appellees.

No. 92–2218.

United States Court of Appeals, Tenth Circuit.

April 27, 1993.

Alexander Shapolia, pro se.

William P. Slattery and David B. Lawrenz, Campbell, Carr, Berge & Sheridan, P.A., Santa Fe, NM, for defendants-appellees.

Before SEYMOUR, ANDERSON, and EBEL, Circuit Judges.

EBEL, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. Therefore, the case is ordered submitted without oral argument.

This case comes before us on a pro se appeal of the district court's order granting the defendant-appellee's motion for summary judgment. We affirm.

The plaintiff-appellant, Alexander Shapolia, began working as an electrician at the Los Alamos National Lab (LANL) in February 1976. In March of 1987, he received a poor performance evaluation from his supervisor, Ray Martin. In September of 1987,

pursuant to internal procedures, Shapolia instituted administrative review proceedings in an attempt to have the negative evaluation removed from his file. Shapolia claims that the personnel policies of both LANL and the University of California, which operates the laboratory under contract with the Department of Energy, require that a panel of three impartial people consider his grievance. However, the decision not to remove the negative evaluation was ultimately made by only one individual, the defendant, John Whetten.

Following the evaluation and review proceedings, Shapolia was placed on conditional employment status and was transferred to another department within LANL. He worked for a year in that department, during which time he was supervised by three different employees. On April 5, 1989, Shapolia was terminated by yet another supervisor for failure to meet the requirements of his conditional employment status.

In January 1991, Shapolia brought the instant action alleging violations of 42 U.S.C. § 1981 and 42 U.S.C. § 2000e–5. Shapolia claims that his negative evaluation and the subsequent review procedures were tainted by religious discrimination and that he was terminated as a result of this discrimination.[1] Ray Martin, the supervisor who gave Shapolia a negative evaluation, is a bishop in the Church of Jesus Christ of Latter Day Saints ("Mormon Church"). John Whetten, the Associate Director who handled the administrative review proceedings, is a member of the Mormon church. Shapolia complains that his negative job evaluation was motivated by Martin's bias against non-Mormons.[2] Shapolia further complains that Whetten could not have been impartial in reviewing Martin's performance evaluation because Whetten is a member of the same church in which Martin is an officer.

■ On September 26, 1991, the district court dismissed Shapolia's Section 1981

---

1. Shapolia also makes general allegations that he was terminated in retaliation for filing a grievance. We find that these allegations are insufficient to state a claim under Title VII.

2. Although it is not clear from the record that any parties were aware of the plaintiff's religion at the time of the employment actions, Shapolia is a non-practicing member of the Greek Orthodox church.

claims. However, the court refused to dismiss the Title VII claims, finding that the complaint stated a claim under the latter theory. On September 4, 1992, the district court granted the defendant's motion for summary judgment on Shapolia's Title VII claims. This appeal followed.[3]

*Standard of Review*

We review summary judgment orders de novo, using the same standards applied by the district court. *Osgood v. State Farm Mut. Auto. Ins. Co.*, 848 F.2d 141, 143 (10th Cir.1988). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir.1991). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir.1991). If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). To sustain this burden, the non-moving party cannot rest on the mere allegations in the pleadings. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Applied Genetics Int'l v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990).

*Discussion*

Title VII provides that "it shall be an unlawful employment practice for an employer ... to discharge any individual ... because of such individual's ... religion." 42 U.S.C. § 2000e–2(a)(1). Religion includes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j). Title VII has been interpreted to protect against requirements of religious conformity and as such protects those who refuse to hold, as well as those who hold, specific religious beliefs. *See International Ass'n of Machinists & Aerospace Workers v. Boeing Co.*, 833 F.2d 165, 169 (9th Cir.1987) (Title VII protects even those individuals who are not members of organized religious groups from contributing to unions in violation of their religious beliefs), *cert. denied*, 485 U.S. 1014, 108 S.Ct. 1488, 99 L.Ed.2d 715 (1988); *Young v. Southwestern Sav. and Loan Assoc.*, 509 F.2d 140, 143–45 (5th Cir.1975) (constructive discharge in violation of Title VII to require employee to attend religious services).

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court set forth a model burden-shifting scheme to order the presentation of evidence in Title VII cases. Under that scheme, the plaintiff has the initial burden of establishing a prima facie case of discrimination. If the plaintiff succeeds, the burden shifts to the defendant to articulate some legitimate nondiscriminatory reason for the employment action. Should the defendant succeed in meeting that burden, the plaintiff has the burden of proving, by a preponderance of the evidence, that the employment action was motivated by illegal discrimination, and that can be done either through direct evidence, or indirectly by showing that the reasons proffered by the defendant are a pretext for discrimination.

---

**3.** The appellant appears before us pro se and accordingly we construe his pleadings liberally. *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 175–76, 66 L.Ed.2d 163 (1980); *Meade v. Grubbs*, 841 F.2d 1512, 1526 (10th Cir.1988).

Although the appellant's notice of appeal does not clearly identify the order he is appealing from, we construe this appeal to relate to the September 4, 1992, order granting the defendant's motion for summary judgment. However, we find that the district court's order dismissing Shapolia's Section 1981 claims was proper since "[s]ection 1981 does not apply to sex or religious discrimination." *Manzanares v. Safeway Stores, Inc.*, 593 F.2d 968, 971 (10th Cir.1979).

*McDonnell,* 411 U.S. at 802–04, 93 S.Ct. at 1822–25.

The Supreme Court, in *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978), stated that the elements of proof in employment discrimination cases were not meant to be "rigid, mechanized or ritualistic." In *McDonnell,* the Court noted that "[t]he facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations." 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13. Accordingly, the proof required to establish a prima facie case under *McDonnell* has been adapted to specific fact scenarios. *See, e.g., E.E.O.C. v. Flasher Co.,* 986 F.2d 1312 (10th Cir.1992) (racial discrimination in termination for violation of work rule); *Notari v. Denver Water Dept.,* 971 F.2d 585 (10th Cir.1992) (reverse sex discrimination in promotion).

■ In the instant case, the appellees urge us to apply the two-step procedure for evaluating Title VII religious discrimination claims that this court set forth in *Toledo v. Nobel–Sysco, Inc.,* 892 F.2d 1481, 1486 (10th Cir. 1989), *cert. denied,* 495 U.S. 948, 110 S.Ct. 2208, 109 L.Ed.2d 535 (1990). Under that procedure, the plaintiff first has the burden of establishing a prima facie case of religious discrimination by proving: "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; (3) he or she was [fired] for failure to comply with the conflicting employment requirement." *Toledo,* 892 F.2d at 1486 (*quoting Turpen v. Missouri–Kansas–Texas R.R.,* 736 F.2d 1022, 1026 (5th Cir.1984)). Only after the plaintiff is successful in establishing a prima face case does the burden shift to the employer to show that it was unable to reasonably accommodate the plaintiff's religious needs without undue hardship. *Id.*

■ We hold that, under the facts of this case, application of the specific requirements set forth in *Toledo* is inappropriate. In *Toledo* and the cases on which it relies, the courts were concerned primarily with an employer's intolerance of a employee's religious practice or an employee's inability to comply with a job requirement because of religious beliefs. *See Toledo,* 892 F.2d 1481 (refusal to hire employee as driver because of religious use of peyote); *Turpen,* 736 F.2d 1022 (employee fired for refusal to work on Sabbath); *Smith v. Pyro Mining Co.,* 827 F.2d 1081 (6th Cir. 1987) (same), *cert. denied,* 485 U.S. 989, 108 S.Ct. 1293, 99 L.Ed.2d 503 (1988). Under Title VII, an employer is required reasonably to accommodate an employee's religious practices or beliefs where accommodation does not cause undue hardship to the company's business interests. *Toledo,* 892 F.2d at 1486. Accordingly, in those cases we have inferred religious discrimination where an employer was unwilling to accommodate religious practices and beliefs.

However, in the instant case, Shapolia claims that he was fired, not because LANL was unwilling to accommodate one of his religious practices, and not because LANL would not make an exception to a job requirement because of his religious beliefs, but simply because he did not hold the same religious beliefs as his supervisors. The question for the trier of fact is straightforward; whether Shapolia's evaluation and eventual termination were motivated by an animus directed against non–Mormons. There are no questions regarding accommodation or reasonableness. As such, this case more closely approximates those straightforward disparate treatment cases in which the plaintiff claims that she was terminated because of her sex or race. *See Flasher,* 986 F.2d at 1316 ("In the final analysis, the court is required to weigh all the evidence and to access the credibility of witnesses in order to determine whether the plaintiff was the victim of intentional discrimination based on protected class characteristics."); *Pitre v. Western Elec. Co.,* 843 F.2d 1262, 1266 (10th Cir.1988) ("The issue in a disparate treatment case such as this one is whether the employer intended to discriminate against the employee."); *McAlester v. United Airlines, Inc.,* 851 F.2d 1249, 1259–62 (10th Cir. 1988); *E.E.O.C. v. Wyoming Retirement System,* 771 F.2d 1425 (10th Cir.1985); *Farmer v. Colorado & Southern Ry. Co.,* 723 F.2d 766 (10th Cir.1983).

However, under the circumstances presented by this case, we also decline to apply the specific prima facie requirements that have been applied in straightforward sex and race discrimination discharge cases. To establish a prima facie case in those actions the plaintiff must show: (i) that he belonged to a protected class; (ii) that his job performance was satisfactory; (iii) that he was discharged; and (iv) that, after he was discharged, the position remained open to similarly qualified applicants. *Starks v. George Court Co., Inc.*, 937 F.2d 311, 314–15 (7th Cir.1991); *Alvarado v. Board of Trustees of Montgomery College*, 928 F.2d 118, 122 (4th Cir.1991); *see also McDonnell*, 411 U.S. at 802, 93 S.Ct. at 1824. The standard for establishing a traditional prima facie case of racial or sexual discrimination does not fit neatly with the facts of this case. First, use of the "protected class" factor in this case would be misleading because it suggests some identifiable characteristic of the plaintiff in order to give rise to Title VII protection. However, in this case, it is the religious beliefs of the employer, and the fact that Shapolia does not share them, that constitute the basis of the claim. Where discrimination is not targeted against a particular religion, but against those who do not share a particular religious belief, the use of the protected class factor is inappropriate. Second, because the discrimination is targeted against non–Mormons, and non–Mormons constitute a majority of society, the case resembles those cases of reverse discrimination in which this court has applied a modified *McDonnell* test. *See Notari*, 971 F.2d at 589. Accordingly, in this case, we decline to adopt the specific set of requirements that are necessary to establish a prima facie case in straightforward sex and race discrimination cases.[4]

The proof necessary to establish a prima facie case is not onerous. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). Thus, in order to establish a prima facie case in actions where the plaintiff claims that he was discriminated against because he did not share certain religious beliefs held by his supervisors, we hold that the plaintiff must show (1) that he was subjected to some adverse employment action; (2) that, at the time the employment action was taken, the employee's job performance was satisfactory;[5] and (3) some additional evidence to support the inference that the employment actions were taken because of a discriminatory motive based upon the employee's failure to hold or follow his or her employer's religious beliefs.[6] Upon such a showing, the plaintiff is entitled to the benefit of the *McDonnell* burden-shifting scheme and its presumptions. *See Furnco Constr. Co.*, 438 U.S. at 576, 98 S.Ct. at 2949 ("[A] Title VII plaintiff carries the initial burden of showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under the Act."); *Pitre*, 843 F.2d at 1265 ("[The prima facie] burden is satisfied by presenting a scenario that on its

---

4. That is not to say that by proving the specific requirements set out in the straightforward sex and race discrimination cases the plaintiff would never satisfy his prima facie burden. We can envision cases in which such a showing would be sufficient.

5. This requirement is consistent with the purposes underlying the burden shifting scheme whereby we seek to eliminate the most common reasons for an employment decision. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094.

6. This test is consistent with the reverse discrimination test set forth in *Notari*, 971 F.2d 585. There we held that, in order to obtain the benefit of the *McDonnell* presumption in a reverse discrimination case, the plaintiff must "establish

background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority." *Id.* at 589.

The use of this prima facie standard in religious discrimination actions such as the one before us is consistent with the case law of other circuits. *See Lawrence v. Mars, Inc.*, 955 F.2d 902, 905–906 (4th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 76, 121 L.Ed.2d 40 (1992); *Meiri v. Dacon*, 759 F.2d 989, 995 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985); *Bowdish v. Continental Accessories, Inc.*, 1991 WL 519742, 1991 U.S.Dist.Lexis 3240, *10 (W.D.Mich.1991); *cf. Blalock v. Metals Trades, Inc.*, 775 F.2d 703, 707–08 (6th Cir.1985) (approving of but declining to apply McDonnell

face suggests the defendant more likely than not discriminated against the plaintiff.").

■ On the facts of this case, we have significant doubts about whether the plaintiff has met his prima facie burden. The mere fact that one Mormon supervisor reviewed another Mormon supervisor's performance appraisal of a non–Mormon employee is not sufficient to raise an inference of discrimination.[7] And, although Shapolia alleges procedural irregularities,[8] we find no evidence that the irregularities were connected to the alleged discrimination.

■ However, we do not decide this appeal on whether Shapolia met his prima facie burden. The district court based its ruling against Shapolia on the grounds that the defendant had advanced a facially nondiscriminatory explanation for the action taken against Shapolia and Shapolia failed to raise a triable issue of fact as to whether that reason was really a pretext for discrimination. We agree with the district court's ruling and accordingly affirm it on the basis relied upon by the district court. *Flasher,* 986 F.2d at 1322.

The defendants in this case presented evidence that Shapolia posted sexually offensive literature in his work area, used inappropriate language toward female coworkers, disobeyed orders of his superiors, exceeded eight hour days despite the admonitions of his supervisors, and performed his work below standards. We find these reasons sufficient on their face to justify the termination.

Once the defendants have articulated a facially nondiscriminatory reason for the termination, the burden shifts back to the plaintiff to show that the defendants' proffered reasons were a pretext for illegal religious discrimination. Shapolia has failed to present sufficient evidence that the defendant's explanations for the termination are a pretext for religious discrimination. He has presented no direct evidence that the claim of below standard job performance was a pretext for discrimination. Although he claims he was told that "everything was O.K." within a month of his termination, he acknowledges that he was on conditional employment status and admits to work infractions and disobeying his supervisors.[9] Nor does he show a genuine dispute of a material fact with regard to the other charges made against him. Shapolia's mere assertions that the Mormons are "clannish" and his own assessment of his job performance are inadequate to raise an issue of fact for trial. Fed. R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Applied Genetics Int'l,* 912 F.2d at 1241. Therefore, no genuine issue of material fact exists regarding pretext.

Shapolia had the burden of proof, once the defendants came forward with nondiscriminatory reasons for the termination, to show that those reasons were a pretext for discrimination. Because he failed to establish a genuine dispute of fact as to this matter upon which he carries the burden of proof, summary judgment in favor of the defendants

---

standard where direct evidence of discrimination is proffered).

7. Shapolia also advances an unsubstantiated allegation that Martin "had a history of difficulty" with non–Mormon technicians. Complaint R. Tab 1.

8. Shapolia alleges that under LANL procedures he was entitled to a review by an impartial panel of three supervisors. However, according to Shapolia, his review was decided by a single individual, John Whetten, who was the Associate Director of Energy and Research Application at LANL and a member of the Mormon church in which Martin is an officer.

   Shapolia claims that (i) the LANL policies do not provide for the involvement of the Associate Director, (ii) the policies of the University of California, which operates the LANL under contract from the Department of Energy, provide that three impartial individuals shall consider the

grievance, and (iii) he was told that three impartial employees would consider his petition. Motion to Reject Summary Judgment, R. Tab 27.

   The defendants claim that LANL policies and procedures provide for the administrative review of Shapolia's performance appraisal by the Associate Director. Motion for Summary Judgment, R. Tab 25 at 2.

   Neither party has provided us with copies of the appropriate policies and they do not appear in the record.

9. Furthermore, although Shapolia's Title VII claims assert that he was discriminated against because he was not Mormon, he does not deny that, after the alleged discrimination, he was transferred to another division of LANL where he worked under the supervision of three non–Mormon supervisors, that he worked there for over a year before he was terminated, and that the eventual decision to terminate him was made by still another non–Mormon supervisor.

was appropriate. *Celotex,* 477 U.S. at 322–25, 106 S.Ct. at 2552–54; *Washington v. Bd. of Public Utilities,* 939 F.2d 901, 904 (10th Cir.1991); *Carey v. United States Postal Service,* 812 F.2d 621, 626 (10th Cir.1987). Accordingly, the order of the district court is AFFIRMED.