**TRUSTEES OF the KANSAS BUILDING TRADES OPEN END HEALTH AND WELFARE TRUST FUND and Trustees of the Topeka Bricklayers Supplemental Plan and Trust, Plaintiffs,**

v.

**Charles M. LILLICH and William Stephenson d/b/a Perfection II Masonry, Defendants.**

Civ. A. No. 93–4252–DES.

United States District Court,
D. Kansas.

June 7, 1995.

Larry D. Hendricks, Stumbo, Hanson & Hendricks, Topeka, KS, for plaintiffs.

William G. Haynes, Frieden, Haynes & Forbes, Topeka, KS, for defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

### I. INTRODUCTION

This matter is before the court on plaintiffs' Motion for Summary Judgment (Doc. 9). Defendants have filed a response to plaintiffs' motion and also filed a Motion for Summary Judgment (Doc. 12).

This case arises out of a dispute between plaintiffs, the trustees of benefit plans on behalf of the trustees, participants and beneficiaries, and defendants, the employers of members of Bricklayers and Allied Craftsman International Union of America Local Union No. 3, Topeka, Kansas, and Local Union No. 11, Emporia, Kansas ("Union"). The dispute concerns the defendants' failure to make timely payments into the fund pursuant to an agreement between the parties.

Plaintiffs bring this action under the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a); the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(f); and the Multiemployer Pension Plan Amendments Act of 1980 ("MPPA"), 29 U.S.C. § 1060.

### II. FACTUAL AND PROCEDURAL BACKGROUND

The defendants and the Union signed a collective bargaining agreement, the last of which covered the period of time from April 1, 1991, through March 31, 1992. In addition, a Health and Welfare Trust Non–Bar-

gaining Agreement was signed. In conjunction with the collective bargaining agreement, defendants agreed to contribute to the Kansas Building Trades Open End Health and Welfare Trust and Topeka Bricklayers Pension Plan.

The collective bargaining agreement was signed by the parties without the Union establishing that it was selected by a majority of the employer's employees within an appropriate unit to represent them for purposes of collective bargaining with regard to the terms and conditions of employment. The agreement signed by the parties is often referred to as a "prehire agreement" as that term is used by the Labor Management Relations Act. 29 U.S.C. § 158(f). The defendant is an employer engaged in "primarily the building and construction industry" as such term is used within the Labor Management Relations Act. 29 U.S.C. § 158(f).

Article XV, paragraph 1 of the agreement between the Union and the defendants provides for automatic renewal of the contract unless reopened for negotiation by written notification.

In a letter dated January 23, 1992, Nelven Smith ("Smith"), Business Representative for Bricklayers & Allied Craftsmen Local No. 3 requested the opportunity to begin negotiations with defendants for the purpose of arriving at a new contract. In a letter dated January 27, 1992, defendant, Charles Lillich ("Lillich"), owner and partner in Perfection II Masonry responded with written notice to the Union that it would like to re-open negotiations and not automatically renew the contract in force at the time.

Article XV of the agreement between the Union and the defendants calls for the parties to present their proposals for a new contract at the first called meeting for renegotiation. Article XV, paragraph 2, requires that upon re-opening the contract the parties begin negotiation not later than 40 days before the expiration of the agreement.

The January 23, 1992, letter Smith sent to the defendants read:

We would like the oppertunity (sic) to commence negotiations with you for the purpose of arriving at a contract.

I will need to know if February 19, 1992, 2:00 p.m. is agreeable with you. There will be several contractors to get together with us at the same time.

The January 27, 1992, memo from Lillich read:

In accordance with our contract, we are giving you our initial written notice, not less than 60 days prior to the expiration date of March 30, 1992 that we would like to re-open the agreement and not automatically renew it.

Following this exchange of correspondence, the Union met with other employers on February 19, but defendant did not attend the meeting.

Article XV, paragraph 3 of the Agreement provides:

If this Agreement is re-opened and negotiations settlement is not reached by the expiration date, the Agreement shall remain in full force and effect until negotiations are broken off by either party through letter advice, addressed to the appropriate party, sent by Certified Mail, return receipt requested.

The Union signed a contract with other masonry contractors on February 19, 1992. The Union and the defendants did not meet to negotiate and the defendants did not sign on to the agreement signed by the other contractors. No notice was given by either the Union or the defendants that negotiations were deemed "broken off."

Defendant ceased making contributions to the fund on April 1, 1992.

On October 13, 1992, counsel for plaintiffs wrote to defendants advising that plaintiffs considered the old agreement valid and in full force and effect. The letter also stated a willingness to listen to any proposals defendants had for a new collective bargaining agreement. On November 2, 1992, the defendants, through their attorney notified the fund attorney and rejected the Union's request to renegotiate until such time as the Union established its majority status by secret ballot election conducted by the National Labor Relations Board.

By letters dated October 13, 1992, and December 23, 1992, plaintiffs made demand for payment of delinquent contributions from the defendant.

On November 30, 1993, the present action was commenced.

By order filed on March 14, 1994, the magistrate ruled that no discovery or trial was required and that the matter should be determined upon dispositive motions. Both parties filed motions for summary judgment and appropriate responses thereto.

The court has now thoroughly reviewed the file and the relevant law and is prepared to rule.

## III. STANDARD OF REVIEW

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The substantive law identifies which issues are material. *Id.* at 248, 106 S.Ct. at 2510. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* Only genuine disputes over facts that might affect the outcome of the suit under the governing law will preclude the entry of summary judgment. *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat. Laboratory*, 992 F.2d 1033, 1036 (10th Cir. 1993). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the [nonmovant's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. at 2552–53. Once the movant makes a properly sup-

ported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is some genuine issue for trial. Fed.R.Civ.P. 56(c). *See also Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (interpreting 56(e)).

Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. at 2552–53.

When examining a motion for summary judgment, the court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986) (stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues").

Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. That is, the court decides whether there are any genuine factual issues that can be resolved only by a trier of fact because they reasonably may be resolved in favor of either party. *Id.*

## IV. DISCUSSION

The threshold question is whether this court has jurisdiction to entertain the issue before it. Plaintiff claims the court has jurisdiction pursuant to the provisions of ERISA and the MPPA. Defendants argue that this is an unfair labor practice case and that jurisdiction therefore lies exclusively

with the National Labor Relations Board pursuant to 29 U.S.C. § 158(f).

The court finds that the plaintiffs have the better side of the argument and that this court does, indeed, have jurisdiction.

The National Labor Relations Board ("NLRB") has exclusive jurisdiction over disputes that concern allegations of unfair labor practices. 29 U.S.C. § 160. This precludes a federal district court from adjudicating such an action. *Scarfi v. Bright Star Industries, Inc.,* 779 F.Supp. 687, 688 (S.D.N.Y. 1992).

■ Federal courts, however, do have jurisdiction pursuant to Section 502 of ERISA, 29 U.S.C. § 1132, to adjudicate actions that are brought to enforce rights under a pension plan. This includes trust agreements such as the one in the case now before the court. *Id.* at 688. In addition, the Labor Management Relations Act, ("LMRA"), 29 U.S.C. § 185 confers jurisdiction on federal courts to adjudicate actions that are brought to enforce a collective bargaining agreement. *Id.*

In *Scarfi* the plaintiffs, trustees of District No. 15 Machinists' Pension Fund, brought suit against defendants for failure to contribute to the fund under the terms of the collective bargaining agreement. Defendant had previously been found to have engaged in unfair labor practices by the NLRB and had been ordered to "make whole" employees who had suffered from those practices. *Id.* The NLRB action was between the Union and the defendant. Through a settlement agreement, the defendant agreed to pay a certain percentage of the outstanding contributions owed on behalf of the employees.

Defendant Bright Star claimed that the federal district court lacked subject matter jurisdiction to hear the case because the NLRB holds exclusive jurisdiction over unfair labor practices. The district court disagreed stating:

The only difficulty with the argument of the defendant is that the relevant statutes, the settled case law, and sound reasoning compel a different conclusion. First, as to the relevant statutes, Bright Star does not argue nor could it—that the grant of exclu-

sive jurisdiction in the NLRB expressly overrides the clear grants of jurisdiction to the federal courts under ERISA and under LMRA. That is, the defendant is unable to demonstrate statutory support for its implicit proposition that the exclusive grant of jurisdiction under the NLRA controls an action under ERISA or under the LMRA if that action also implicates questions of unfair labor practices. Rather, there is no explicit statutory coordination of these provisions. Such coordination is provided, however, by the settled case law.

779 F.Supp. at 688–89.

The court then reviewed relevant case law which supports the proposition that the authority of the NLRB to deal with unfair labor practices which also violate a collective bargaining agreement "does not destroy the jurisdiction of the courts in suits under § 301 [of the LMRA]." *Scarfi,* 779 F.Supp. at 689, citing *Smith v. Evening News Association,* 371 U.S. 195, 197, 83 S.Ct. 267, 268–69, 9 L.Ed.2d 246 (1962). *See also International Organization of Masters, Mates & Pilots v. Trinidad,* 803 F.2d 69 (2d Cir.1986) (federal courts have concurrent jurisdiction with NLRB in cases involving both unfair labor practices and claims of breach of collective bargaining agreements).

In the case at bar, the court first notes that defendant presumes that the collective bargaining agreement between it and the Union has expired. Second, because of that presumption, defendant primarily relies on two cases to support its claim: *John Deklewa & Sons,* 282 NLRB 1375, 1987 WL 90249 (1987) *enf'd sub. nom. International Assoc. of Bridge Structural & Ornamental Iron Workers v. NLRB,* 843 F.2d 770 (3d Cir.), *cert. denied* 488 U.S. 889, 109 S.Ct. 222, 102 L.Ed.2d 213 (1988) and *Laborers Health & Welfare Trust Fund for Northern California v. Advanced Lightweight Concrete Co.,* 484 U.S. 539, 108 S.Ct. 830, 98 L.Ed.2d 936 (1988).

Defendants' reliance on both cases is misplaced. The *Deklewa* decision, as it relates to this case, merely stands for the proposition that a construction company is not obligated to continue to negotiate with a union

after a prehire agreement expires. *Deklewa,* 843 F.2d at 778-9. Likewise, *Laborers* determined that federal jurisdiction under Sections 502 and 515 of ERISA applies to actions for the collection of promised contributions to a fund. *Laborers* concerned an action where the contributions were alleged to be due for a period after the termination of a contract. There was no question that the contract in *Laborers* had expired.

In this case, unlike those cited above, the evidence is clear that the collective bargaining agreement was still in force and effect at the time defendant stopped paying contributions. Such a situation does not invoke the provisions of § 8(a)(5) of the National Labor Relations Act which is concerned with seeking post-contract contributions. Rather, it invokes the civil enforcement provisions of ERISA. 29 U.S.C. § 1132(a)(3), (e). The language of the statute and its interpretation by the courts has resulted in federal courts exercising subject matter jurisdiction over cases where trustees bring an action under ERISA. *Carpenters District Council of Kansas City Pension Fund v. Bowlus School Supply, Inc.,* 716 F.Supp. 1232, 1234 (W.D.Mo.1989). Contrary to defendants' assertions, this court has jurisdiction over the matter now before it.

 Furthermore, the evidence leads the court to the conclusion that the plaintiffs must prevail in this action. Defendants were obligated by the Agreement to continue payments into the fund so long as the Agreement was in effect.

Defendants by their January 27, 1992, letter reopened negotiations. The Agreement provides that once negotiations are reopened, and settlement is not reached by the expiration date, the Agreement remains in full force and effect unless negotiations are broken off.

The Agreement is very specific as to how negotiations, once re-opened, can be broken off:

If this Agreement is re-opened and negotiations settlement is not reached by the expiration date, the Agreement shall remain in full force and effect until negotiations are broken off by either party through letter advice, addressed to the appropriate party, sent by Certified Mail, return receipt requested.

There can be no question that defendants by their letter of January 27, 1993, reopened negotiations. There can also be no question that no settlement was reached by the expiration date of the Agreement and that defendants did not break off negotiations by "letter advice, addressed to the appropriate party, sent by Certified Mail, return receipt requested." Because negotiations were not broken off, the Agreement remained in full force and effect.

Therefore, the defendants were bound by that Agreement to make contributions to the fund. Defendants failure to pay was a clear violation of the Agreement. Pursuant to the provisions of ERISA, this court has jurisdiction over the matter.

The court finds that plaintiffs are entitled to summary judgment as a matter of law for unpaid accrued contributions because of defendants' breach of contract.

The parties have stipulated that:

"... in the event that this case finally results in a determination that contributions are due and owing, the parties stipulate that the amount due and owing will be determined by an audit performed by the Plaintiff or determined by the normal procedure used by employers and the Plaintiffs to calculate contributions. This procedure includes providing the Plaintiff's copies of Kansas form 100, copies of Federal form 941, and all individual work records *showing hours worked by each employee, crafts and positions with the company of each employer and other documents as necessary to complete a determination of delinquent contributions from April 1, 1992 to the present date.*

The parties agree the amount identified, as calculated above, will be the amount of contributions *due and owing* to the Plaintiff in the event the issues herein are decided in Plaintiff's favor."

**IT IS THEREFORE BY THE COURT ORDERED** that plaintiffs' Motion for Summary Judgment (Doc. 9) is granted and de-

fendants' Motion for Summary Judgment (Doc. 12) is denied.

**IT IS FURTHER ORDERED** that in accordance with the stipulation, the parties are to determine the amount due and owing plaintiffs and submit the same to the court within 30 days of the date of this order or no later than **July 7, 1995.**