Charles KOCH, Plaintiff,

v.

SHELL OIL COMPANY and Feed
Specialties Co., Inc.,
Defendants.

Civil Action No. 92–4239–DES.

United States District Court,
D. Kansas.

May 24, 1996.

Ronald R. Hein, Stephen P. Weir, Hein, Ebert & Weir, Chtd., Robert V. Eye, Irigonegaray & Associates, Topeka, KS, for plaintiff.

Hal D. Meltzer, Gregory N. Pottorff, Turner & Boisseau, Chartered, Overland Park, KS, for Shell Oil Company.

James P. Nordstrom, Fisher, Patterson, Sayler & Smith, Topeka, KS, for Feed Specialities Co., Inc.

## MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

### I. INTRODUCTION

This matter is before the court on the motion of Defendant Shell Oil Company for Summary Judgment (Doc. 119).

### II. BACKGROUND

From April 1979 through October 1981, Mr. Koch fed his dairy cows a feed additive known as Rabon Oral Larvicide Premix ("R.O.L. Premix"). R.O.L. Premix contains Rabon Oral Larvicide, a product made from Rabon. Rabon is manufactured by Shell Oil Company ("Shell"). R.O.L. Premix is distributed by Feed Specialties, Inc. ("Feed Specialties").

Beginning in May 1979, and continuing until July 1986, a significant number of the plaintiff's cattle died. The plaintiff purchased his last batch of R.O.L. Premix in September 1981, and ceased using the product at the end of October 1981, because he suspected that the product was involved in the death of his cattle. The plaintiff himself has experienced health problems since the 1980's, which he attributes to his exposure to Rabon.

In March 1991, experts developed a test which could detect Rabon in fat tissue. In April 1991, these experts confirmed the presence of Rabon in tissue taken both from Mr.

Koch, and from one of Mr. Koch's bulls that had died in 1981. On November 25, 1991, the plaintiff filed suit against Shell and Feed Specialties, alleging that Rabon caused the death of a substantial portion of his dairy herd, as well as physical injuries to himself.

## III. *SUMMARY JUDGMENT STANDARDS*

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. at 2510. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might properly affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir.1993). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. at 2552–53.

Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (interpreting Fed.R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. at 2552. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. at 2552–53.

A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986) (stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues"). The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. at 2511.

## IV. *DISCUSSION*

Shell admits that it has manufactured Rabon. The defendant also concedes that "Rabon" is a registered trademark of Shell Oil Company. The defendant argues, however, that it did not manufacture the Rabon used by the plaintiff. The defendant refers the court to a Request for Admissions which it made to Defendant Feed Specialties. Feed Specialties admitted that "all Rabon that was used in Feed Specialties Co., Inc.'s Rol Pre–Mix product was manufactured and sold to defendant Feed Specialties Co., Inc. by Diamond Shamrock."

The plaintiff counters that if Feed Specialties did indeed purchase its Rabon from Diamond Shamrock, Diamond Shamrock had first purchased the Rabon from Shell. In

support of its contention, the plaintiff has provided the court with copies of documents produced by Shell on April 3, 1996. The documents include a letter from Shell to Diamond Shamrock, and various Shell interoffice memoranda. In its March 5, 1980, letter to Diamond Shamrock, Shell states that "approximately 120 M Lbs. of RABON was shipped to Diamond in the last quarter of 1979 for use in formulations—60 M Lbs. to Ralston Purina for liquid products and 60 M Lbs. to Princeton for use in the manufacture of RABON Oral Larvicide."

The court concludes that the documents produced by Shell create a genuine issue of material fact as to who manufactured the Rabon which Feed Specialties ultimately distributed in its ROL Premix. The plaintiff brings his claim under the Kansas Product Liability Act, Kan.Stat.Ann. §§ 60–3301 to –3307. Section 60–3302 defines a "product seller" as "any person or entity that is engaged in the business of selling products, whether the sale is for resale, or for use or consumption. The term includes a manufacturer, wholesaler, distributor or retailer of the relevant product. . . ." A reasonable jury could find that Shell sold Rabon to Diamond Shamrock, and that Diamond Shamrock then resold and/or manufactured the Rabon into Rabon Oral Larvicide for Feed Specialties. Such a sale for resale on the part of Shell would be subject to the provisions of the Kansas Product Liability Act.

**IT IS THEREFORE BY THE COURT ORDERED** that the motion of Defendant Shell Oil Company for Summary Judgment (Doc. 119) is denied.